UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

NATIONAL INSTITUTE OF FAMILY AND
LIFE ADVOCATES, GIANNA'S HOUSE, INC.,
and CHOOSE LIFE OF JAMESTOWN, INC. d/b/a
OPTIONS CARE CENTER,

                Plaintiffs,

    vs.

LETITIA JAMES, in her official capacity as
Attorney General of the State of New York.

                Defendant.

Case No. 24-cv-00514-JLS

---

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

LETITIA JAMES
Attorney General of the State of New York
ALYSSA J. PANTZER
DANIEL R. MAGUIRE
Assistant Attorney General, of Counsel
Main Place Tower, Suite 300A
350 Main Street
Buffalo, New York 14202
Tel: (716) 853-8419

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ..................................................................................... 2

ARGUMENT .................................................................................................... 6

POINT I        THE COURT SHOULD ABSTAIN .................................................. 6

    A.    Under the *Younger* abstention doctrine, the Court lacks subject matter
       jurisdiction over this lawsuit. ...................................................... 6

       1.    The Enforcement Action provides an adequate opportunity for review of
          Plaintiffs' constitutional claims. ........................................ 7

       2.    The important State interest of enforcement of New York's Consumer
          Protection Statutes is implicated in the Enforcement Action. ................. 10

       3.    Neither the "Bad Faith" nor the "Extraordinary Circumstances"
          Exceptions Apply. ....................................................... 10

    B.    Even if abstention is not mandatory, this Court should exercise its discretion to
       abstain. ............................................................................ 11

       1.    The Court should abstain from exercising jurisdiction pursuant to the
          *Colorado River* abstention doctrine. ..................................... 12

       2.    The Court should abstain from exercising jurisdiction pursuant to the
          *Pullman* abstention doctrine. ........................................... 12

       3.    The Court should decline to exercise jurisdiction pursuant to its broad
          discretion under the Declaratory Judgment Act ........................... 13

POINT II       PLAINTIFFS DO NOT HAVE STANDING BECAUSE THEY HAVE NOT
              SUFFERED AN INJURY-IN-FACT. ................................................... 14

    A.    Plaintiffs have not alleged that they have made or would make statements about
       APR that would violate the Consumer Protection Statutes. ..................... 16

       1.    NIFLA ................................................................. 16

       2.    Gianna's House ........................................................ 17

       3.    Options Care Center ................................................... 18

    B.    Plaintiffs do not face a sufficient threat of injury to establish
       standing in the context of this pre-enforcement, "as-applied" challenge to
       enforcement of the Consumer Protection Statutes. ............................. 19

POINT III      PLAINTIFFS' CLAIMS ARE NOT RIPE FOR REVIEW ...................... 21

    A.    Plaintiffs' claims are not constitutionally ripe for review. ..................... 21

    B.    Plaintiffs' claims are not prudentially ripe for review. ........................ 22

       1.    Fitness for Judicial Review .............................................. 22

       2.    Hardship to Plaintiff of Withholding Judicial Review ..................... 24

POINT IV      PLAINTIFFS HAVE NOT MET THEIR BURDEN FOR A PRELIMINARY INJUNCTION ..................................................................................................... 24

    A.    Plaintiffs are unlikely to succeed on the merits. ...................................................... 25

        1.    Plaintiffs are unlikely to succeed on the merits of their First Amendment content and viewpoint discrimination claims. ........................................ 25

            a.    OAG's enforcement of the Consumer Protection Statutes are not subject to strict scrutiny because the First Amendment does not protect false or misleading commercial speech. ........................................................... 25

            b.    PHOs' false and/or misleading advertisements about APR constitutes commercial speech. ............................... 28

            c.    The OAG's Enforcement Action is not content or viewpoint based. ............................................................. 30

            d.    Rational basis is the applicable level of scrutiny and is satisfied. .................................................................. 34

        2.    Plaintiffs are unlikely to succeed on the merits of their claim that the Enforcement Action is selective enforcement based on PHO's viewpoint. ................................................................................. 35

        3.    Plaintiffs are unlikely to succeed on the merits of their free exercise claim. ......................................................................... 37

    B.    Plaintiffs have not shown irreparable harm. ........................................................... 39

    C.    The balance of equities and the public interest weigh in favor of the OAG. ......... 40

CONCLUSION ................................................................................................................... 40

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Gardner*,
    387 U.S. 136 (1967) ........................................................................................... 22

*Adam v. Barr*,
    No. 18-CV-2106 (AJN), 2019 WL 1426991 (S.D.N.Y. Mar. 29, 2019) ................................ 17

*All-Options, Inc. v. Atty. Gen. of Ind.*,
    546 F. Supp. 3d 754 (D. Ind. 2021) .................................................................. 30

*Am. Med. Ass'n v. Stenehjem*,
    412 F. Supp. 3d 1134 (D.N.D. 2019) ................................................................ 30

*Americans for Prosperity Found. v. Bonta*,
    594 U.S. 595 (2021) ................................................................................... 26, 28

*Antonyuk v. Chiumento*,
    89 F.4th 271 (2d Cir. 2023) ......................................................................... 19

*Ashcroft v. ACLU*,
    535 U.S. 564 (2002) ................................................................................... 32

*Bad Frog Brewery, Inc. v. New York State Liquor Auth.*,
    134 F.3d 87 (2d Cir. 1998) ......................................................................... 29

*Bolger v. Youngs Drugs Prod. Corp.*,
    463 U.S. 60 (1983) .............................................................................. 26, 28

*Casa Marie Inc. v. Superior Court of Puerto Rico*,
    988 F.2d 252 (1st Cir. 1993) ........................................................................ 9

*Cayuga Nation v. Tanner*,
    824 F.3d 321 (2d Cir. 2016) ......................................................................... 19

*Cedar Rapids Cellular Tel., L.P. v. Miller*,
    280 F.3d 874 (8th Cir. 2002) ......................................................................... 9

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
    447 U.S. 557 (1980) ................................................................................ 25, 28

*Church of American Knights of the Ku Klux Klan v. Kerik*,
    356 F.3d 197 (2d Cir. 2004) ......................................................................... 34

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
    508 U.S. 520 (1993) ................................................................................... 37

*City of Austin v. Reagan National Advertising*,
    596 U.S. 61 (2022) ................................................................................... 31

*City of Cincinnati v. Discovery Network, Inc.*,
    507 U.S. 410 (1993) ................................................................................... 25

*Clementine Company, LLC. v. Adams*,
    74 F.4th 77 (2d Cir. 2023) ......................................................................... 31

*Colorado River Water Conservation Dist. v. U.S.*,
424 U.S. 800 (1976) ......................................................................... 11, 12

*CompassCare v. Cuomo*,
465 F. Supp. 3d 122 (N.D.N.Y. 2020) ................................................. 37

*Conn. v. Duncan*,
612 F.3d 107 (2d Cir. 2010) ................................................................ 22

*Copeland v. Vance*,
893 F.3d 101 (2d Cir. 2018) ................................................................ 19

*Crowley v. Courville*,
76 F.3d 47 (2d Cir. 1996) .................................................................... 35

*Cytyc Corp. v. Neuromedical Sys.*,
12 F. Supp. 2d 296 (S.D.N.Y. 1998) ................................................... 36

*Diamond "D" Const. Corp. v. McGowan*,
282 F.3d 191 (2d Cir. 2002) .................................................. 7, 10, 11

*Employment Div. v. Smith*,
494 U.S. 872 (1990) ............................................................................ 37

*Fulton v. City of Philadelphia*,
593 U.S. 522 (2021) ............................................................................ 37

*Goshen v. Mutual Life Ins. Co.*,
98 N.Y.2d 314 (N.Y. 2002) ............................................................ 10, 27

*Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*,
721 F.3d 264 (4th Cir. 2013) .............................................................. 29

*Grieve v. Tamerin*,
269 F.3d 149 (2d Cir. 2001) .................................................................. 7

*Hassan v. United States*,
441 F. App'x 10 (2d Cir. 2011) ........................................................... 15

*Hedges v. Obama*,
724 F.3d 170 (2d Cir. 2013) ................................................................ 19

*Hicks v. Miranda*,
422 U.S. 332 (1975) .......................................................................... 8, 9

*Hindu Temple Society of North America v. Supreme Court of State of New York*,
335 F. Supp. 2d 369 (E.D.N.Y. 2004) ................................................... 7

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
725 F.3d 65 (2d Cir. 2013) .................................................................. 21

*Joglo Realties, Inc. v. Seggos*,
No. 16-cv-1666, 2016 WL 449140 (E.D.N.Y. Aug. 24, 2016) .............. 39

*Karlin v. IVF America*,
93 N.Y.2d 282 (1999) ................................................................... 34, 37

*Koch v. Acher, Merrall & Condit Co.*,
    967 N.E.2d 675 (N.Y. 2012) .................................................................................. 27

*Lefkowitz v. Colo. State Christian Coll. of Church of the Inner Power, Inc.*,
    346 N.Y.S.2d 482 (Sup. Ct. N.Y. Cnty. 1973) ....................................................... 27

*Make the Rd. N.Y. v. Cuccinelli*,
    419 F. Supp. 3d 647 (S.D.N.Y. 2019) .................................................................... 40

*Marathon Outdoor, LLC v. Vesconti*,
    107 F. Supp. 2d 355 (S.D.N.Y. 2000) .................................................................... 35

*Marchi v. Bd. of Coop. Educ. Servs. of Albany*,
    173 F.3d 469 (2d Cir. 1999) .................................................................... 22, 23, 24

*Miller v. McDonald*,
    No. 23-00484, 2024 WL 104077 (W.D.N.Y. Mar. 11, 2024) ................................. 38

*Moody v. NetChoice, LLC*,
    144 S.Ct. 2383 (2024) ........................................................................................... 26

*Mount v. PulsePoint, Inc.*,
    684 Fed. Appx. 32 (2d Cir. 2017) .......................................................................... 27

*N.Y. Times Co. v. Gonzales*,
    459 F.3d 160 (2d Cir. 2006) ................................................................................... 14

*Nastri v. Dykes*,
    No. 23-1023, 2024 WL 1338778 (2d Cir. 2024) ................................................... 15

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
    585 U.S. 755 (2018) ............................................................................................... 31

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003) ......................................................................................... 21, 22

*Nat'l Prods. Assn. v. James*,
    No. 23-cv-08912 (JMA)(LGD), 2024 WL 2977683 (E.D.N.Y. June 13, 2024) ..... 17

*New York v. Arm or Ally, LLC*,
    No. 22-6124, 2024 WL 756474 (S.D.N.Y. 2024) .................................................. 27

*November Team, Inc. v. New York Joint Commn. on Public Ethics*,
    233 F. Supp. 3d 366 (S.D.N.Y. 2017) .................................................................... 13

*Nutritional Health Alliance v. Shalala*,
    144 F.3d 220 (2d Cir. 1998) ............................................................................. 22, 23

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
    523 U.S. 726 (1998) ............................................................................................... 21

*Otoe-Missouria Tribe v. N.Y.S. Dep't of Fin. Servs.*,
    769 F.3d 105 (2d Cir. 2014) ................................................................................... 40

*People v. Credit Suisse Sec. (USA) LLC*,
    107 N.E.3d 515 (N.Y. 2018) .................................................................................. 27

v

*People v. Gen. Elec. Co.*,
　302 A.D.2d 314 (N.Y. App. Div. 2003) ................................................................ 27

*Planned Parenthood of Tennessee and N. Mississippi v. Slatery*,
　523 F. Supp. 3d 985 (M.D. Tenn. 2021) .............................................................. 30

*Quackenbush v. Allstate Insurance Co.*,
　517 U.S. 706 (1996) ............................................................................................. 11

*R.R. Comm'n of Tex. v. Pullman Co.*,
　312 U.S. 496 (1941) ............................................................................................. 11

*Reed v. Town of Gilbert, Ariz.*,
　576 U.S. 155 (2015) ............................................................................................. 31

*Roman Cath. Diocese of Albany v. Vullo*,
　__ N.E. 3d __, 2024 WL 2278222 (N.Y. May 21, 2024) ..................................... 39

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
　515 U.S. 819 (1995) ............................................................................................. 32

*Ross v. Bank of Am., NA.*,
　524 F.3d 217 (2d Cir. 2008) ................................................................................ 21

*See First Resort Inc. v. Herrera*,
　860 F.3d 1263 (9th Cir. 2017) ............................................................................. 34

*Simmonds v. INS*,
　326 F.3d 351 (2d Cir. 2003) ................................................................................ 24

*Slatteru v. Hochul*,
　61 F.4th 278 (2d Cir. 2023) ................................................................................. 38

*Spargo v. New York State Comm'n on Judicial Conduct*,
　351 F.3d 65 (2d Cir. 2003) ......................................................................... 7, 8, 9

*Spokeo, Inc. v. Robins*,
　578 U.S. 330 (2016) ............................................................................................. 14

*Stivers v. State of Minn.*,
　575 F.2d 200 (8th Cir. 1978) ................................................................................. 8

*Time Warner Cable v. Bloomberg L.P.*,
　118 F.3d 917 (2d Cir. 1997) ................................................................................ 39

*U.S. v. Hansen*,
　599 U.S. 762 (2023) ............................................................................................. 26

*United Fence & Guard Rail Corp. v. Cuomo*,
　878 F.2d 588 (2d Cir. 1989) ................................................................................ 12

*United States v. Caronia*,
　703 F.3d 149 (2d Cir. 2012) ................................................................................ 32

*Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*,
　425 U.S. 748 (1976) ............................................................................................. 26

*Village of Westfield, N.Y. v. Welch's*,
170 F.3d 116 (2d Cir. 1999).................................................................................. 11

*Virginia Office for Protection and Advocacy v. Stewart*,
563 U.S. 247 (2011)............................................................................................ 12

*Vitagliano v. County of Westchester*,
71 F.4th 130 (2d Cir. 2023).................................................................................. 15

*Vt. All. for Ethical Care, Inc. v. Hoser*,
274 F. Supp. 3d 227 (D. Vt. 2017)........................................................................ 20

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989)............................................................................................ 31

*We The Patriots USA, Inc. v. Hochul*,
17 F.4th 266 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021)................... 37

*Williams v. Lambert*,
46 F.3d 1275 (2d Cir. 1995).................................................................................. 12

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995)............................................................................................ 13

*Winter v. Natural Res. Defense Council, Inc.*,
555 U.S. 7 (2008)................................................................................................ 24

*Women's Community Health Center v. Texas Health Facilities Commission*,
685 F.2d 974 (5th Cir.1982)................................................................................... 8

*Younger v. Harris*,
401 U.S. 37 (1971)........................................................................................... 6, 7

*Zauderer v. Office of Disciplinary Counsel of Sup. Ct. of Ohio*,
471 U.S. 626 (1985)....................................................................................... 26, 34

## **Statutes**

15 U.S.C.A § 45................................................................................................... 11

28 U.S.C.A § 2201(a)...................................................................................... 12, 13

N.J.S.A. 56:8-4................................................................................................... 11

N.Y. Exec. Law § 63(12).............................................................................. *passim*

N.Y. Gen. Bus. Law § 349............................................................................ *passim*

N.Y. Gen. Bus. Law § 350............................................................................ *passim*

vii

Defendant Letitia James, in her official capacity as New York State Attorney General, submits this memorandum of law in opposition to Plaintiffs' Motion for a Preliminary Injunction.

## PRELIMINARY STATEMENT

This lawsuit is a collateral attack on a pending enforcement action in New York state court brought by the New York State Office of the Attorney General ("OAG") under its authority to enforce state protections against consumer fraud and false advertising. The OAG commenced that action against a group of non-profit business entities in connection with their false and misleading advertising statements about a scientifically untested treatment they call "Abortion Pill Reversal" (or "APR"). In response, Plaintiffs National Institute of Family and Life Advocates ("NIFLA") and two member organizations, Gianna's House and Options Care Center, initiated this litigation, asserting that the OAG's enforcement of the Consumer Protection Statutes (defined below) against the other entities for false and misleading advertising statements violates Plaintiffs' First Amendment rights to free speech and free exercise of religion. NIFLA is a membership organization to which at least some of the defendants in the state-court action belong. In bringing this action, NIFLA is attempting to litigate issues on behalf of the parties to the state-court action. Through this pre-enforcement challenge, Plaintiffs seek a preliminary and permanent injunction preventing the OAG from bringing a similar action against *them* (and NIFLA's members) based on similar statements they have not yet made but allege they might someday make about APR.

Plaintiffs cannot meet the demanding test for obtaining a preliminary injunction. As an initial matter, this Court should abstain from exercising jurisdiction over these claims while the state court action is pending, Plaintiffs have not suffered an injury sufficient to establish standing, and their claims are not constitutionally or prudentially ripe for review. Plaintiffs are also unable to succeed on the merits of their First Amendment speech claims because the Consumer Protection

Statutes are constitutional regulations of commercial speech, and false or misleading advertising—as Plaintiffs seek to engage in with respect to APR—is not protected.

Plaintiffs' Free Exercise claim likewise fails because the Consumer Protection Statutes are neutral laws of general applicability that are rationally related to protecting New Yorkers from fraudulent and deceptive business conduct, and there is no evidence they would be targeted with selective enforcement. Ultimately, while organizations may use lawful means to attempt to persuade pregnant individuals to continue their pregnancies in furtherance of their mission and beliefs, they cannot publicly advertise APR to consumers with unsubstantiated claims about its efficacy and safety. They must be held to the same standards under as anyone else advertising health care services in New York. Given this backdrop, Plaintiffs cannot demonstrate irreparable harm and the balance of equities and the public interest weigh heavily against them.

This case represents an unprecedented attempt to thwart the longstanding authority of the OAG to enforce consumer protection laws. The Court should reject Plaintiffs' attempt to put the OAG's state law claims to the test here in federal court or, at a minimum, abstain while the state action is pending.

## **STATEMENT OF FACTS**

This case is a response to a state court enforcement action focused on the widespread promotion of a scientifically unproven medical intervention known as APR, through which proponents claim to be able to "reverse" a medication abortion. *See* Verified Complaint, ECF. No. 1 ("NIFLA Compl.") ¶¶ 9, 12; *James v. Heartbeat Int'l, Inc.*, No. 451314/2024 (Sup. Ct. N.Y. Cty.), filed May 6, 2024 ("HBI Compl."), ¶ 5; Irving Decl. ¶ 2. The APR protocol involves advising a pregnant person who has taken mifepristone, the first step in the United States Food and Drug Administration ("FDA")-approved regimen for a medication abortion, not to take the second

drug in that regimen, misoprostol, thus interrupting that FDA-approved process before it is complete. HBI Compl. ¶ 8. In place of misoprostol, the APR protocol entails administering repeated doses of the hormone progesterone, which is claimed to increase the chances of the pregnancy continuing without harmful effects, and thus to "reverse" the effects of the "abortion pill." *Id.*

In fact, no valid scientific evidence has demonstrated that APR is safe, or even that it is effective in increasing the chances of a pregnancy continuing after a patient takes mifepristone. Schreiber Decl. ¶ 5. To the contrary, progesterone's use in APR has never been approved by the FDA, the only clinical trial that has been conducted to assess APR's safety or efficacy had to be halted due to serious safety concerns, and the practice has been condemned as "unproven" and "unethical" by the American College of Obstetricians and Gynecologists, along with other leading medical associations.  *Id.* ¶¶ 37, 42.

Concerned about the advertisement of this risky and unproven treatment to New York consumers, in 2023, the OAG undertook an investigation into public advertising on websites and other social media platforms relating to APR. Irving Decl. ¶¶ 7-8. Through that investigation, the OAG identified numerous false and misleading advertisements regarding APR's safety and efficacy that are not backed by valid scientific evidence. *Id.* The investigation further determined that many of these statements appeared to originate with an entity called Heartbeat International ("HBI"), an international organization that operates a network of self-described "pro-life pregnancy help organizations" ("PHOs"). *Id.*; HBI Compl. ¶ 5. The OAG identified eleven New York organizations that were (a) identified on HBI's website as being part of HBI's worldwide network of PHOs; (b) making claims about APR on their own websites, social media platforms, or other consumer-facing promotional materials that were substantially similar to those found on

abortionpillreversal.com, a central website operated by HBI and (c) participating in HBI's scheme to advertise and promote APR in New York by funneling New York consumers to obtain APR treatment, by linking their websites directly to abortionpillreversal.org, or by directing consumers to call a national hotline number, also operated by HBI. There, callers would be connected with a local medical provider in HBI's "Abortion Pill Rescue Network," who has been trained and vetted by HBI to perform APR. Irving Decl. ¶¶ 8-13.

Following a thorough investigation, the OAG commenced legal action against HBI and those eleven entities (collectively "HBI Defendants") under New York General Business Law ("GBL") Article 22-A, §§ 349 and 350, which broadly prohibit false advertising and fraudulent or misleading business practices, and under §63(12) of the Executive Law, which prohibits repeated fraudulent conduct (collectively "Consumer Protection Statutes").[1] Pursuant to the Consumer Protection Statutes, prior to commencing suit, OAG notified the HBI Defendants of its intent to commence legal action under those provisions. *See* NIFLA Compl. Ex. A, ECF No. 1-3. Before the statutory five-day waiting period had elapsed, the HBI Defendants filed their own affirmative lawsuit in New York Supreme Court, Monroe County, seeking to prevent the OAG from taking further enforcement action. *Heartbeat Int'l, Inc. v. James*, No. E2024007242 (Sup. Ct. Monroe Cty.), filed April 30, 2024. The HBI Defendants' action asserts substantially the same claims as this case. *Id.* ¶¶ 154-209. No such relief having been ordered, OAG subsequently filed suit in New York County. *See People v. Heartbeat Intl, Inc., et al.*, No. 451314/2024 (Sup. Ct. N.Y. Cnty. 2024) (hereinafter the "Enforcement Action").

---

[1] GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[,]" and GBL § 350 prohibits "false advertising in the conduct of any business, trade or commerce or in the furnishing of any service." Executive Law § 63(12) prohibits repeated or persistent fraud "in the carrying on, conducting or transaction of business."

In the Enforcement Action, the OAG asserts that the HBI Defendants have engaged in widespread false and/or misleading business and advertising practices targeting New York consumers, by making a series of specific false and misleading advertising statements on their websites and other consumer-oriented marketing materials about the safety and efficacy of APR to induce consumers to undergo APR treatment. *Id.* ¶¶ 259-91. The two actions were subsequently consolidated. *HBI v. James*, No. E2024007242 (Sup. Ct. Monroe Cty.), Order dated May 24, 2024 (together, "HBI Litigation").[2]

Within three weeks of the OAG filing its suit, Plaintiffs filed this federal action asserting that the pending Enforcement Action against the HBI Defendants threatens their work promoting APR and violates their rights under the Free Speech and Free Exercise Clauses of the First Amendment. *See,* NIFLA Compl. Plaintiffs do not allege they are currently making exactly the same statements or engaging in exactly the same conduct as the HBI Defendants, but rather, broadly allege that they "advertise their services and any referral services on their websites and through print handouts and brochures, newspaper or magazine ads, television commercials, social media, and other online ads," that they "have made or would like to make statements about the safety and effectiveness" of APR, and that those statements are truthful and accurate. *Id.* ¶ 37-38. They further allege that the OAG's actions against other entities have chilled their speech causing them to remove discussion of APR from their own websites and, for NIFLA, to advise its members to do the same. *Id.* ¶¶ 41, 165-70. Plaintiffs also concede that some of NIFLA's member organizations received the OAG's Notices of Intention to Sue, *id.* ¶ 170, and presumably therefore, were included as HBI Defendants. Plaintiffs assert that the Enforcement Action against the HBI Defendants—and hypothetical future enforcement against them—is unconstitutional content-

---

[2] The Attorney General appealed the part of that order setting venue for the two cases in Monroe County. HBI Litigation, NYSCEF No. 43 (June 12, 2024).

based and viewpoint discrimination, selective enforcement, and an infringement on the free exercise of their religion, and seek preliminary and permanent injunctive relief and a declaratory judgment.

## ARGUMENT

## POINT I

## THE COURT SHOULD ABSTAIN.

In bringing this lawsuit, Plaintiffs ask this Court to inject itself into a pending Enforcement Action brought by the OAG against the HBI Defendants for their advertisements about APR. In the Enforcement Action, a state court will determine: (1) whether advertising APR on a consumer-facing website and directing consumers to obtain APR services by linking to abortionpillreversal.org or providing a national hotline number constitutes commercial speech; and (2) whether the HBI Defendants' statements, including that "APR can reverse an abortion," "reverse the effects of the abortion pill," or "increase the chances of allowing a pregnancy to continue," are false or misleading. Through this lawsuit, Plaintiffs (who have not had the Consumer Protection Statutes enforced against them) ask this Court to resolve these precise issues. And, through their preliminary injunction motion, they seek to have this Court resolve those issues before the state court can address them. This Court should decline Plaintiffs' request to involve itself in these actively litigated issues currently pending in a state forum.

**A.      Under the *Younger* abstention doctrine, the Court lacks subject matter jurisdiction over this lawsuit.**

Under the abstention doctrine derived from *Younger v. Harris*, 401 U.S. 37 (1971), the Court lacks subject matter jurisdiction over Plaintiff's attempt to undermine the Enforcement Action. The *Younger* abstention doctrine is based on "respect for State functions, a recognition of the fact that the entire country is made up of a Union of separate State governments, and a

6

continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions …" *Younger*, 401 U.S. at 44. "The spirit animating *Younger* is that state courts can be trusted to follow the mandates of the federal constitution." *Hindu Temple Society of North America v. Supreme Court of State of New York*, 335 F. Supp. 2d 369, 374 (E.D.N.Y. 2004); *see also Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65 (2d Cir. 2003) (acknowledging "the dignity of states as co-equal sovereigns in our federal system.") (*citing Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 200 (2d Cir. 2002) [hereinafter "*Diamond*"]).

*Younger* abstention is required when: (1) there is an ongoing state action; (2) an important state interest is implicated in that action; and (3) the state action affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims. *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001). So long as all three elements are met, the only way to avoid application of *Younger* is to establish that the "bad faith" or "extraordinary circumstances" exceptions are met. Here, all three elements are met, and neither exception applies.

### 1. The Enforcement Action provides an adequate opportunity for review of Plaintiffs' constitutional claims.

"Under *Younge*r, it is the plaintiff's burden to demonstrate that state remedies are inadequate." *Spargo,* 351 F.3d at 78. Plaintiffs cannot do so here. The Enforcement Action will fully address and resolve the issues presented by Plaintiffs in this litigation. Specifically, whether PHOs' statements about APR's ability to reverse abortions while directing consumers to HBI's network of medical professionals providing APR services violate the Consumer Protection Statutes or are protected First Amendment speech. Because the legal issues presented in the Enforcement Action and this lawsuit are the same, *Younger* abstention applies.

*Younger* abstention applies even though Plaintiffs are not the specific defendants in the Enforcement Action. First, NIFLA concedes that certain of its members—on whose behalf NIFLA purports to assert claims—*are* named as defendants in the Enforcement Action. NIFLA Compl. ¶ 171.

Second, *Younger* abstention applies even as to NIFLA itself and the other Plaintiffs not named as defendants in the Enforcement Action. Where the interests of parties involved in a state proceeding and nonparties to that proceeding are intertwined, "*Younger* cannot be avoided simply by joining the nonparties to the state court proceeding in order to procure injunctive and declaratory relief (in federal court) against that proceeding." *Women's Community Health Center v. Texas Health Facilities Commission*, 685 F.2d 974 (5th Cir.1982); *see also Stivers v. State of Minn.*, 575 F.2d 200, 203 (8th Cir. 1978) (holding that the "district court correctly applied the principles of *Younger* to [federal plaintiffs challenging state law practice regulations], even though they were not named as parties in the state proceedings," because their interests were "closely intertwined" with those of fellow legal association members sued in state court for unauthorized practice of law).

For example, in *Hicks v. Miranda*, 422 U.S. 332 (1975), the state seized allegedly obscene films at a theater and filed criminal charges against two of the theater's employees. The owners of the theater brought a federal action for declaratory and injunctive relief with respect to the state obscenity statute. The Supreme Court held that the district court should have abstained from entertaining the owners' constitutional challenges because the same issues were presented before the state criminal court. *Id.* at 349-50 ("Obviously, [the owners'] interests and those of their employees were intertwined and, ... the federal action sought to interfere with the pending state prosecution.").

8

Likewise, in *Spargo,* 351 F.3d at 81, the Second Circuit applied *Younger* to bar the claims of federal plaintiffs who were not parties to an ongoing state proceeding. *Spargo* involved disciplinary hearings against a state judge who allegedly violated New York's rules of judicial conduct. *Id.* at 67. The judge, along with two of his political supporters, sought to enjoin the state disciplinary proceeding in federal court, claiming that the State's judicial conduct rules violated their First Amendment rights. *Id.* Although the political supporters were not parties to the ongoing disciplinary proceeding, the Court held that their First Amendment claims were barred by *Younger* because their interests were "inextricably intertwined" with those of the judge facing discipline and because they sought "to directly interfere with the pending disciplinary proceeding." *Id.* at 85; *see also Cedar Rapids Cellular Tel., L.P. v. Miller,* 280 F.3d 874, 881-82 (8th Cir. 2002) (applying *Younger* to claims of federal plaintiffs not party to state proceedings); *Casa Marie Inc. v. Superior Court of Puerto Rico,* 988 F.2d 252, 268-69 (1st Cir. 1993) (same).

Plaintiffs effectively concede that their interests are inextricably intertwined with the HBI Defendants. Any NIFLA members named as HBI Defendants will of course have full opportunity to vindicate their rights, and as to the other Plaintiffs, the First Amendment arguments presented here will be adjudicated by way of the First Amendment claims brought by the HBI Defendants as well as their pending anti-SLAPP motion to dismiss the Enforcement Action.[3] Not only are the Plaintiffs' interests intertwined with those of the HBI Defendants, but, as in *Hicks*, this action requires the Court to adjudicate the very same issues that are presented in the Enforcement Action before the state court renders a determination. Just like in *Spargo* and *Hicks,* the application of

---

[3] In the Enforcement Action, the HBI Defendants filed a motion to dismiss under New York's anti-SLAPP statute (N.Y. Civil Rights Law § 76-(a)(1)-(2)) arguing that their statements about APR are protected by the First Amendment. *See* Enforcement Action, NYSCEF Dkt. Nos. 39-44.

*Younger* abstention cannot be evaded by having Plaintiffs, who are nonparties to the Enforcement Action, bring this suit.

**2.      The important State interest of enforcement of New York's Consumer Protection Statutes is implicated in the Enforcement Action.**

New York State has an important interest in the enforcement of its Consumer Protection Statutes. The Consumer Protection Statutes were "enacted to provide consumers with a means of redress for injuries caused by unlawfully deceptive acts and practices [and] to secure an honest market place where trust, and not deception, prevails." *Goshen v. Mutual Life Ins. Co.*, 98 N.Y.2d 314, 324 (N.Y. 2002) (internal citations and quotations omitted). By filing the Enforcement Action, the OAG seeks to protect New York consumers from false and deceptive advertising regarding APR services. New York's interest in vigorous enforcement of the Consumer Protection Statutes, including in regulating the advertising of scientifically invalid medical services, implicates an important state interest.

**3.      Neither the "Bad Faith" nor the "Extraordinary Circumstances" Exceptions Apply.**

To invoke the "bad faith" exception, Plaintiffs must show that, when the OAG commenced the Enforcement Action, OAG had "no reasonable expectations of obtaining a favorable outcome." *Diamond*, 282 F.3d at 199 (internal quotations and citation omitted). Plaintiffs cannot meet this high burden. As demonstrated by the OAG's substantive opposition to Plaintiffs' motion (which addresses the same issues as the Enforcement Action), the OAG has a reasonable expectation that it will prevail in the Enforcement Action.  Indeed, other courts have already found that APR lacks scientific support and that the advertisements similar to those made by the HBI Defendants are false.  *See* Point IV.A.1.b, *infra*.

The "extraordinary circumstances" exception also does not apply. That exception is available only when: (1) there is no "state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation"; and (2) a finding is "made that the litigant will suffer great and immediate harm if the federal court does not intervene." *Diamond*, 282 F.3d at 201 (internal quotation marks and citation omitted). The Supreme Court has recognized two circumstances that meet this high standard: when a statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it," or when a state body is "incompetent by reason of bias to adjudicate the issues pending before it." *Id.*

There is nothing to suggest that the Consumer Protection Statutes alleged to be violated in the Enforcement Action are "flagrantly and patently violative of express constitution prohibitions" or that the state court hearing the Enforcement Action is "incompetent by reason of bias." The First Amendment does not protect false commercial speech. *See* Point IV.A.1.a., *infra*. Moreover, federal and state law and prohibit false advertising, fraud, and deceptive business practices. *See, e.g.*, 15 U.S.C.A § 45; N.J.S.A. 56:8-4. The exceptions to *Younger* do not apply—abstention is therefore mandatory. *Diamond*, 282 F.3d at 201.

**B.    Even if abstention is not mandatory, this Court should exercise its discretion to abstain.**

In addition to mandatory abstention under *Younger*, federal courts decline to exercise jurisdiction, "where denying a federal forum would clearly serve an important countervailing interest…for example where abstention is warranted by considerations of 'proper constitutional adjudication,' 'regard for federal-state relations,' or wise judicial administration.'" *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 716-19 (1996). Other "traditional categories of abstention" set forth by the Supreme Court apply to this case: those derived from *Colorado River Water*

*Conservation Dist. v. U.S.*, 424 U.S. 800 (1976) and *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941). *Village of Westfield, N.Y. v. Welch's*, 170 F.3d 116 (2d Cir. 1999).  Even if this Court determines that none of these doctrines apply, it should nonetheless decline to exercise jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

1.   **The Court should abstain from exercising jurisdiction pursuant to the *Colorado River* abstention doctrine.**

Under *Colorado River* abstention, "while the [general] rule is that the pendency of an action in the state court is no bar to proceedings concerning the matter in the Federal court having jurisdiction" a court may abstain to conserve federal judicial resources where resolution of the state matter may result in "comprehensive disposition of the litigation." *Colorado River Water Conservation Dist.*, 424 U.S. at 817. This litigation was filed in reaction to the Enforcement Action, which will necessarily address the precise underlying issues Plaintiffs seek to have this Court adjudicate. Such overlapping parallel litigation is a waste of federal judicial resources. Therefore, this Court should exercise its discretion and abstain.

2.   **The Court should abstain from exercising jurisdiction pursuant to the *Pullman* abstention doctrine.**

When there is a "state-law issue that may be dispositive federal courts should abstain under *Pullman*." *Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 264 (2011) (concurring) (*citing R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S 496,496 (1941). Three conditions must be present to trigger *Pullman* abstention: "First, the state statute must be unclear or the issue of state law uncertain; second, resolution of the federal issue must depend upon the interpretation given to the ambiguous state provision; and third, the state law must be susceptible of an interpretation that would avoid or modify the federal constitutional issue." *Williams v. Lambert*, 46 F.3d 1275, 1281 (2d Cir. 1995) (quoting *United Fence & Guard Rail Corp. v. Cuomo*,

878 F.2d 588, 594 (2d Cir. 1989)).  While the Second Circuit advises "particular caution" when abstaining in a First Amendment case, it is still appropriate to abstain when the *Pullman* factors are satisfied. *See November Team, Inc. v. New York Joint Commn. on Public Ethics*, 233 F. Supp. 3d 366, 372 (S.D.N.Y. 2017).

Whether Plaintiffs' proposed statements are false and whether they are "in the conduct of business" are squarely issues of state law under the Consumer Protection Statutes. If the speech is false and is commercial than the First Amendment is not implicated at all, *see* Point IV.A.1.a., and therefore, whether a federal constitutional question even exists depends upon the interpretation of the state Consumer Protection Statutes.

### 3. The Court should decline to exercise jurisdiction pursuant to its broad discretion under the Declaratory Judgment Act.

Even if the Court were to determine that none of the abstention doctrines apply, it should still exercise its broad discretion under the Declaratory Judgment Act and decline to hear this case. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a)(emphasis added). The permissive language of the Declaratory Judgment Act has consistently been construed to grant district courts broad discretion to refuse to exercise jurisdiction over a declaratory action otherwise properly lodged before them—greater discretion than in the context of the abstention doctrine. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282-83, 287 (1995).

The Second Circuit has identified five factors to be considered before a court entertains a declaratory judgment action: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether a judgment would finalize the controversy and offer

relief from uncertainty; (3) whether the proposed remedy is being used merely for "procedural fencing" or a "race to res judicata"; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court"; and (5) whether there is a better or more effective remedy. *N.Y. Times Co. v. Gonzales*, 459 F.3d 160, 167 (2d Cir. 2006).

These factors weigh against the exercise of jurisdiction. First, the requested judgment would not necessarily "serve a useful purpose in clarifying or settling the legal issues involved" nor "finalize the controversy and offer relief from uncertainty." *Id.* The Enforcement Action was preceded by a lengthy legal and factual investigation into the specific statements by the HBI Defendants. By contrast, Plaintiffs here seeks a declaration regarding vague and unspecified future statements which are devoid of context. In addition, this action is blatant procedural fencing—an attempt to use a federal court to enjoin the OAG's Enforcement Action. Next, the declaratory and injunctive relief sought here would impinge upon the OAG's ability to protect New Yorkers from false and deceptive advertising and thus improperly encroach upon state sovereignty. Finally, there is a more effective remedy here – allowing the Enforcement Action to play out so that state courts can resolve the application of the Consumer Protection Statutes to the statements from which this action arose.

## POINT II

## PLAINTIFFS DO NOT HAVE STANDING BECAUSE THEY HAVE NOT SUFFERED AN INJURY-IN-FACT.[4]

Constitutional standing, which derives from Article III, is designed "to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*,

---

[4] If this Court concludes that Plaintiffs lack standing, the Court "need not address the factors to be considered in deciding whether to award a preliminary injunction" and should instead deny the motion and dismiss the case for lack of subject matter jurisdiction. *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 259 (2d Cir. 2015).

14

578 U.S. 330, 338 (2016). The doctrine imposes three requirements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*

The requirement that a plaintiff demonstrate an injury-in-fact "has been repeatedly described as the hard floor of Article III jurisdiction, and requires a litigant to show an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Hassan v. United States*, 441 F. App'x 10, 11 (2d Cir. 2011) (citations and quotations omitted). Here, the OAG has not sued, threatened to sue, or otherwise acted against Plaintiffs for their statements about APR. Plaintiffs, therefore, premise their theory of standing on the chilling effect created by the threat of future civil litigation against them for their potential future statements about APR, stemming from the OAG's enforcement of the Consumer Protection Statutes against the HBI Defendants. The question presented is whether Plaintiffs' unrealized fears of the OAG civilly enforcing the Consumer Protection Statutes against them in the future establishes their standing to bring this lawsuit. They do not.

In pre-enforcement challenges, the plaintiff must show that the "threatened enforcement" of the law against him is "sufficiently imminent." *Nastri v. Dykes*, No. 23-1023, 2024 WL 1338778, at *1 (2d Cir. 2024). This imminence showing requires Plaintiffs to demonstrate that (1) they "inten[d] to engage in a course of conduct" that arguably involves a "constitutional interest;" (2) the intended conduct is "proscribed by the challenged law;" and (3) "there exists a credible threat" that he would be prosecuted for violating that law. *Vitagliano v. County of Westchester*, 71 F.4th 130, 136 (2d Cir. 2023). Plaintiffs cannot satisfy these elements.

**A.    Plaintiffs have not alleged that they have made or would make statements about APR that would violate the Consumer Protection Statutes.**

**1.    NIFLA**

NIFLA alleges that its past statements about APR run afoul of the Consumer Protection Statutes as enforced by the OAG.[5] But NIFLA avoids identifying the statements it allegedly made **and** the context in which it made those statements making it impossible to determine whether the statements violate the Consumer Protection Statutes. *See* NIFLA Compl. ¶¶ 176-179. Without such context, it is impossible to determine whether the statement was made in a commercial context implicating the Consumer Protection Statutes. *See also id.* ¶¶ 181, 182, 185.

In the few specific examples NIFLA does provide, the alleged speech is not consumer oriented. For example, the advice NIFLA gives to its member organizations was, on its face, targeted *at its members*, rather than at consumers.  *See id.* at ¶¶ 177-179. Similarly, while the full context of the testimonial NIFLA points to from an individual woman is not apparent—nor has the post been produced to the Court—it appears to have been made in the context of a weblog offering "tips *for pregnancy centers* regarding the use of progesterone therapy to serve women who want to 'reverse the effects of mifepristone." NIFLA Compl. ¶ 181. Such statements were made in a non-commercial context and, therefore, differ materially from the consumer-facing statements targeted by the OAG in the Enforcement Action. Irving Decl. ¶¶ 16-17.

---

[5] NIFLA also points to statements by its unidentified members (NIFLA Compl. ¶¶ 169-173), but NIFLA cannot rely on such statements to establish standing because organizational plaintiffs "lack standing to assert the rights of its members." *See Connecticut Citizens Defense League Inc. v. Lamont*, 6 F.4th 439, 447 (2021) (noting the Second Circuit's longstanding doctrine that an organization "lack[s] 'standing to assert the rights of its members," and could only bring "suit on its *own* behalf" if it could show that the organization itself suffered an "actual or threatened injury in fact."). Moreover, because Gianna's House and Options Care Center do not have standing to sue in their own right, NIFLA cannot rely on its association with them to establish standing for itself. *See Do No Harm v. Pfizer, Inc.*, 646 F. Supp. 3d 490, 502 (S.D.N.Y. 2022).

Ultimately, NIFLA failed to identify any specific statements about APR that would trigger certain or "imminent" enforcement of the Consumer Protection Statutes by the OAG. NIFLA, therefore, cannot rely on a "threat of enforcement" to establish standing in this litigation.[6]

### 2.      Gianna's House

Gianna's House alleges that the statement "[i]f you have recently taken the abortion pill and are having regret, it may be possible to undo the effects of abortion drugs. Learn more here" violates the Consumer Protection Statutes. NIFLA Compl. ¶ 208. This statement does not use the "reverse/reversal language" targeted in the Enforcement Action and is therefore not identical to the specific statements that are the subject of that Action.

Gianna's House also alleges that it would like to make future statements about APR but is refraining from doing so because of the Enforcement Action. *Id.* ¶ 215. That Gianna's House might make similar statements in the future is insufficient to establish standing. "To sufficiently allege standing on [a] pre-enforcement claim, [a] [p]laintiff must…allege ***both*** a concrete intention to violate the law and the credible threat of prosecution if he were to do so." *Adam v. Barr*, No. 18-CV-2106 (AJN), 2019 WL 1426991, at *3 (S.D.N.Y. Mar. 29, 2019) (emphasis added). Gianna's House's conclusory assertion that it would like to make certain statements in an unspecified context at some undefined point in the future is not sufficient to establish either a concrete intention to violate the Consumer Protection Statutes, or a credible threat of prosecution by the OAG. *See Nat'l Prods. Assn. v. James*, No. 23-cv-08912 (JMA)(LGD), 2024 WL 2977683, at *6 (E.D.N.Y. June 13, 2024) (plaintiffs failed to establish a concrete intent to expose themselves to harm when

---

[6] NIFLA also attempts to establish standing based on it expending organizational resources to change its advice because of the threat of litigation from the OAG. NIFLA Compl. ¶ 191. An organization, however, "that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing by expending money to gather information and advocate against the defendants' action." *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 394 (2024).

plaintiffs provided thread-bare affidavits that did not provide specifics as to their "concrete intention to engage in a course of conduct prohibited by the Statute.").

### 3.     Options Care Center

Options Care Center identifies four statements it claims violate the Consumer Protection Statutes as enforced by the OAG. NIFLA Compl. ¶¶ 223, 225, 226, 228-29. The first three statements, *id.* at ¶¶ 223, 225, 226, do not directly link to abortionpillreversal.com or provide the hotline number, and are therefore unlike the commercial advertising campaigns targeted in the Enforcement Action. Irving Decl. ¶¶ 25-31. Moreover, Options Care Center does not allege where its "Abortion Pill FAQ" appeared or to whom its "postcards" were "disseminated," nor are those materials provided, NIFLA Compl. ¶¶ 223–24, making it impossible to determine whether any statements made in these contexts were, in fact, consumer-facing. Irving Decl., ¶¶ 25-31. Options Care Center also fails to allege that the fourth statement, which appeared on "small cards" distributed to the community, violates the Consumer Protection Statutes as enforced by the OAG. While the "small cards"—which, again, have not been provided— allegedly included a QR code to the Abortion Pill Rescue Network website, Options Care Center cleverly avoids identifying the specific language or website address included on the card. NIFLA Compl. ¶¶ 227-28. Options Care Center cannot meet its burden to show that a statement violates the Consumer Protection Statutes as enforced by the OAG without specifying the language of the statement.

Options Care Center also alleges that it has prepared specific statements to post to one of its websites about APR, but that it has not posted the statements for fear of prosecution. *Id.* ¶ 234. But those statements appear to differ from the advertising statements targeted in the Enforcement Action because they were allegedly slated to be posted on a website that appears to be aimed at *donors and volunteers*, friendsofocc.com. Consequently, because the context of the proposed

statements differs materially from that of the statements targeted in the Enforcement Action, Options Care Center cannot show that any such enforcement is likely or imminent.

**B.    Plaintiffs do not face a sufficient threat of injury to establish standing in the context of this pre-enforcement, "as-applied" challenge to enforcement of the Consumer Protection Statutes.**

Even assuming that Plaintiffs' allegations establish that their statements violated the Consumer Protection Statutes (they do not), Plaintiffs still do not face a sufficient threat of injury in the context of a pre-enforcement, as-applied challenged. Although courts generally presume that the government will enforce the challenged law against a violator, that presumption should not apply here. *See Hedges v. Obama*, 724 F.3d 170, 200 (2d Cir. 2013).

First, like the statute at issue in *Hedges*, the Consumer Protection Statutes merely authorize—but do not mandate or direct—the civil prosecution that Plaintiffs' fear. *See* N.Y. Exec. Law § 63(12) (the "Attorney General *may* apply…"); N.Y. Gen. Bus. Law § 349 (OAG "*may* bring an action…"). Because the OAG's enforcement authority under the Consumer Protection Statutes is explicitly permissive, not mandatory, the Court should not presume the Consumer Protection Statutes will be enforced against Plaintiffs.

Second, this lawsuit is unique in the context of standing for preenforcement challenges. Normally, a plaintiff seeking to challenge a statute he believes to be unconstitutional brings a preenforcement facial challenge to a statute (*Hedges*, 724 F.3d at 173) or an as-applied challenge to a statute proscribing very specific conduct (*Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016)). *See Copeland v. Vance*, 893 F.3d 101, 112 (2d Cir. 2018) ("Courts consider prospective as-applied vagueness challenges comparatively infrequently."). In a preenforcement facial challenge context, how the government chooses to interpret the statute is of limited relevance since the plaintiffs are arguing the statute is unconstitutional under any interpretation.   The

government's interpretation of a statute is also of limited relevance when the statute clearly prescribes certain conduct because there is not significant ambiguity in how the statute can be interpreted.  In those contexts, it is sensible to presume the government will enforce the statute against violators.

Here, however, Plaintiffs bring their claims principally an as-applied challenge to the Consumer Protection Statutes despite those statutes never being applied to them. In an as-applied challenge, the central issue is whether the application of a statute in a specific circumstance is constitutional. Resolving that issue, however, cannot be done until the statute is applied because courts cannot discern how the government will apply the statute until it does so. *See Vt. All. for Ethical Care, Inc. v. Hoser*, 274 F. Supp. 3d 227, 239 (D. Vt. 2017) ("In the absence of an actual enforcement action, the court is left to speculate about how a member of Plaintiffs' organizations might respond to an inquiry from a terminally ill patient and whether that response might precipitate a disciplinary proceeding.").

As to the Plaintiffs themselves, the same future contingencies facing the court in *Vt. All. for Ethical Care, Inc.* are present here, leaving this Court to speculate as to (1) what statements about APR Plaintiffs want to make and (2) whether the OAG would commence enforcement proceedings in response to those statements.

Lastly, this court should not presume that the OAG will enforce the Consumer Protection Statutes against Plaintiffs for the self-evident reasons that she has not enforced the Consumer Protection Statutes against the Plaintiffs.

Ultimately, there is not a sufficient or imminent threat of the OAG enforcing the Consumer Protection Statutes against Plaintiffs to support Article III standing.

<u>POINT III</u>

**PLAINTIFFS' CLAIMS ARE NOT RIPE FOR REVIEW.**

For similar reasons, this case is not yet ripe for judicial review. "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (internal quotation marks omitted). There are "two overlapping threshold criteria for the exercise of a federal court's jurisdiction" that fall under the term ripeness: (1) constitutional ripeness; and (2) prudential ripeness. *Simmonds v. Immigration and Naturalization Serv.*, 326 F.3d 351, 356-57 (2d Cir. 2003) (internal citations omitted).

**A.      Plaintiffs' claims are not constitutionally ripe for review.**

The constitutional ripeness requirement "overlaps with the standing doctrine, 'most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical.'" *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 110 (2d Cir. 2013) (quoting *Ross v. Bank of Am., NA.*, 524 F.3d 217, 226 (2d Cir. 2008)). As discussed in detail above, two contingencies must be met before Plaintiffs' injury becomes imminent, as opposed to "conjectural or hypothetical": (1) Plaintiffs must make a statement about APR that violates the Consumer Protection Statutes;[7] and (2) the OAG must exercise its discretion under the Consumer Protection Statutes to bring a civil enforcement action against Plaintiffs for that statement. Because these contingencies remain unfulfilled, Plaintiffs have not met the constitutional requirements of ripeness. *See, e.g.*, *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733-34 (1998) (challenge to agency action unripe where there is no "significant practical

---

[7] As detailed in Point II.C., *supra*, Plaintiffs have not identified any past statements they made about APR that violate the Consumer Protection Statutes as enforced by the OAG.

harm" at the present time because a number of future actions would need to occur to make the harm more "imminent" and "certain").

**B.      Plaintiffs' claims are not prudentially ripe for review.**

To determine whether a challenge to a government action is prudentially ripe for judicial review, courts proceed with a two-step inquiry, "requiring [courts] to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967).

**1.      Fitness for Judicial Review**

Whether an action is "fit" for determination turns on whether "consideration of the underlying legal issues would necessarily be facilitated if they were raised in the context of a specific attempt to enforce" the law at issue. *Nutritional Health Alliance v. Shalala*, 144 F.3d 220, 225 (2d Cir. 1998). "[T]he 'fitness' analysis is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur." *Simmonds,* 326 F.3d at 359 (internal quotation marks omitted). If further factual development would facilitate the legal analysis and prevent the possibility of an advisory determination, the court should, at a minimum, decline to exercise jurisdiction as a prudential matter. *Nat'l Hospitality Assoc*, 538 U.S. at 811. These concerns are of heightened importance "when, as in the present case, the potentially unripe question presented for review is a constitutional question. If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality … unless such adjudication is unavoidable." *Conn. v. Duncan*, 612 F.3d 107, 113 n.3 (2d Cir. 2010).

*Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469 (2d Cir. 1999) is instructive. There, a teacher argued that an employer directive prohibiting him from using references to

religion in the delivery of his instructional program were unconstitutional as applied to (1) his responses to personal questions raised by students off school grounds; and (2) his responses to such questions raised outside of class but on school grounds. *Id.* at 475. The Second Circuit found these questions unripe:

> Since BOCES has not threatened to apply the directive to any of Marchi's off-campus expressive activities, a court entertaining Marchi's challenge would be forced to guess how BOCES might apply the directive and to pronounce on the validity of numerous possible applications of the directive, all highly fact-specific and, as of yet, hypothetical. *Id.* at 478.

Plaintiffs' claims regarding their APR speech are similarly unripe. In their Prayer for Relief, Plaintiffs seek a broad injunction barring the OAG from enforcing the Consumer Protection Statutes "against Plaintiffs and their members for speaking about the use of progesterone for abortion pill reversal." NIFLA Compl. ¶ 66). Given the broad range of statements that Plaintiffs could potentially make about APR in various contexts, it is easy to imagine statements that would clearly run afoul of the Consumer Protection Statutes. "Plaintiffs and their members" would be able such statements if the Court issues the broad injunction sought by Plaintiffs.

Since the OAG has not sued or threatened to sue Plaintiffs under the Consumer Protection Statutes for their APR statements, this Court would be forced to guess at how the OAG might apply the Consumer Protection Statutes to Plaintiffs' future APR statements and to act as a clearinghouse for the various, hypothetical statements that Plaintiffs might like to make about APR in the future. "Such an open-ended and indefinite challenge is not well suited to judicial decision." *Marchi*, 173 F.3d at 478. Rather, any such determinations "would necessarily be facilitated if they were raised in the context of a specific attempt to enforce" the laws at issue. *Nutritional Health Alliance*, 144 F.3d at 225. Ultimately, what will "facilitate the legal analysis" is the state courts determination of these issues in the Enforcement Action, which has yet to occur.

### 2.    Hardship to Plaintiff of Withholding Judicial Review

The second step in the ripeness analysis is "whether and to what extent the parties will endure hardship if a decision is withheld." *Simmonds v. INS,* 326 F.3d 351, 359 (2d Cir. 2003). In assessing this possibility of hardship, "we ask whether the challenged action creates a direct and immediate dilemma for the parties." *Marchi,* 173 F.3d at 478. "The mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship." *Simmonds,* 326 F.3d at 360. The hardship standard is relaxed somewhat in the First Amendment context "to avoid the chilling of protected speech," but "some credible fear of enforcement must exist." *Marchi,* 173 F.3d at 479.

As discussed above, Plaintiffs have not demonstrated a credible fear that the OAG intends to enforce the Consumer Protection Statutes against them in an unconstitutional manner. First, the OAG has not filed a civil enforcement action against the Plaintiffs, has not threatened to do so, and has given no indication that she views Plaintiffs' past statements about APR as violating the Consumer Protection Statutes. *See* Irving Decl. ¶¶ 14-31. Second, to the extent any Plaintiff has identified with sufficient specificity the statements it would like to make about APR in the future and the contexts in which it would make them (which it has not), the Enforcement Action will resolve whether such statements violate the Consumer Protection Statutes or are protected First Amendment speech. There is consequently no hardship to Plaintiffs in withholding judicial review.

<u>**POINT IV**</u>

### PLAINTIFFS HAVE NOT MET THEIR BURDEN FOR A PRELIMINARY INJUNCTION

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008). The movant bears the heavy burden of establishing: (1) that they are likely to succeed on the merits, (2) that they are likely to suffer

irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their

favor, and (4) that the injunction is in the public interest. *Id.* at 20. Plaintiffs cannot establish a

substantial likelihood of success on the merits.

**A.    Plaintiffs are unlikely to succeed on the merits.**

**1.    Plaintiffs are unlikely to succeed on the merits of their First Amendment
content and viewpoint discrimination claims.**

**a.    OAG's enforcement of the Consumer Protection Statutes are not
subject to strict scrutiny because the First Amendment does not
protect false or misleading commercial speech.**

Even assuming this Court has jurisdiction, Plaintiffs' First Amendment claims fail. False

and misleading commercial speech, like the false and misleading advertising practices at issue in

the Enforcement Action, is not protected by the First Amendment and therefore must satisfy only

rational basis review.

Plaintiffs insist that OAG's enforcement of the Consumer Protection Statutes must meet

and fails strict scrutiny. But regulation of false and/or misleading commercial speech is not subject

to strict scrutiny, because false and/or misleading commercial speech receives no First Amendment

protection. In a First Amendment challenge to government restriction of commercial speech, the

court must first determine (1) "whether the expression is protected by the First Amendment," and

(2) "whether the asserted governmental interest is substantial." *Central Hudson Gas & Elec. Corp.

v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980). "If both inquiries yield positive

answers, [the court] must determine (3) whether the regulation directly advances the governmental

interest asserted, and (4) whether it is more extensive than is necessary to serve that interest." *Id*.

If the commercial speech is found to be false or misleading, "then it is not protected by the First

Amendment at all," and the inquiry ends there. *See City of Cincinnati v. Discovery Network, Inc.*,

507 U.S. 410, 433-434 (1993) (citation omitted).

Plaintiffs first appear to assert that the Consumer Protection Statutes are facially unconstitutional. However, they do not, and could not, mount a meritorious content-based or viewpoint based *facial* challenge. "Even in the First Amendment context, facial challenges are disfavored[.]" *Moody v. NetChoice, LLC*, 144 S.Ct. 2383, 2409 (2024). To state a facial challenge, Plaintiffs would have had to allege, and did not, that "a substantial number of the [Consumer Protection Statutes] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021); *U.S. v. Hansen*, 599 U.S. 762, 770 (2023) (likewise asking whether the law "prohibits a substantial amount of protected speech relative to its plainly legitimate sweep."); *see also U.S. v. Hansen*, 599 U.S. 762, 770 (2023). It has long been settled that the "[s]tates and the federal government are free to prevent dissemination of commercial speech that is false, deceptive, or misleading . . . or that proposes an illegal transaction[.]" *Zauderer v. Office of Disciplinary Counsel of Sup. Ct. of Ohio*, 471 U.S. 626, 638 (1985); *see also Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771-72 (1976) (First Amendment does not bar a state from "dealing effectively" with "deceptive or misleading commercial speech"); *Bolger v. Youngs Drugs Prod. Corp.*, 463 U.S. 60, 65 (1983) (("In light of the greater potential for deception or confusion in the context of certain advertising messages content-based restrictions on commercial speech may be permissible.") (internal citations omitted)).

Plaintiffs next argue that the Consumer Protection Statutes are required to incorporate "traditional" elements of "knowledge, reliance, loss, or materiality to a victim or consumers" to satisfy constitutional requirements. *See* PI Mem. 12. First, the Enforcement Action *has* alleged the statements were materially misleading. *See* HBI Compl. ¶¶ 109-258. And unlike common-law or criminal fraud, which do include the elements of scienter and reliance, the Consumer Protection

Statutes do not. *See, e.g.*, *People v. Credit Suisse Sec. (USA) LLC*, 107 N.E.3d 515, 524 (N.Y. 2018); *Koch v. Acher, Merrall & Condit Co.*, 967 N.E.2d 675, 675-76 (N.Y. 2012) ("Justifiable reliance by the plaintiff is not an element of the statutory claim." (citations omitted)); *People v. Gen. Elec. Co.*, 302 A.D.2d 314, 315 (N.Y. App. Div. 2003) ("[N]either bad faith nor scienter is required under Executive Law § 63(12)." (citations omitted)). Nor must the OAG demonstrate damages when seeking injunctive relief. *Mount v. PulsePoint, Inc.*, 684 Fed. Appx. 32, 36 (2d Cir. 2017); *Goshen*, 98 N.Y.2d at 324. Plaintiffs' citations to common-law fraud cases arising in these other contexts are therefore inapposite, and they have cited no case holding that such elements are constitutionally required in the context of regulation of commercial speech.[8] And because false commercial speech is not protected by the First Amendment at all, once speech is found to be false and commercial, no further element is mandated by the constitution.

Accordingly, as state and federal courts have recognized, the First Amendment does not insulate fraudulent and misleading commercial speech from the OAG's enforcement of the Consumer Protection Statutes. *See Lefkowitz v. Colo. State Christian Coll. of Church of the Inner Power, Inc.*, 346 N.Y.S.2d 482, 484 (Sup. Ct. N.Y. Cnty. 1973) ("[I]n moving to enjoin, restrain and prohibit the defendants' fraudulent and misleading practices in New York State the Attorney General is not infringing upon the First Amendment guarantee of freedom of religion but, rather acting well within its right to prevent a fraud being committed on the citizens of this State."); *see also New York v. Arm or Ally, LLC*, No. 22-6124, 2024 WL 756474, at *15 (S.D.N.Y. 2024) (appeal pending) (rejecting First Amendment challenge to OAG's enforcement of Consumer Protection Statutes where defendants' commercial speech was "false and misleading"). The

---

[8] To the extent that plaintiffs rely on criminal fraud prohibitions, those are even more inapposite. (*See* PI Mem. 12).

"plainly legitimate" sweep of the Consumer Protection Statutes cannot seriously be questioned. *Americans for Prosperity Found.*, 594 U.S. at 615.

> **b.**    **PHOs' false and/or misleading advertisements about APR constitutes commercial speech.**

Plaintiffs assert that any past or proposed statements they make about APR and referrals to APR providers could not constitute commercial speech because they do not charge consumers for their services and receive no renumeration for the referrals to APR providers, and because it is an expression their religious viewpoint. PI Mem. 6-7, 11. Setting aside the unanswered question of exactly what speech is at issue in this case,[9] neither the absence of a direct financial transaction for the services advertised nor the religious viewpoint of the speaker provides a blanket exemption from speech being considered commercial.

"The First Amendment's concern for commercial speech is based on the informational function of advertising." *Central Hudson.*, 447 U.S. at 563 (internal citation omitted). "[W]hether or not the communication is an advertisement, [makes] reference to a specific product, and economic motivations, are all factors to be considered in whether or not speech is commercial or non-commercial." *Bolger*, 463 U.S. at 66. "[T]he potential commercial nature of speech does not hinge solely on whether the [speaker] has an economic motive, as even *Bolger* does not preclude

---

[9] As discussed above, Plaintiffs' own past statements do not implicate the Consumer Protection Statutes and it is not possible to evaluate Plaintiffs' *hypothetical future* statements without knowing the content of those statements or their context. *See infra* POINT II.A. However, it is worth noting that Plaintiffs concede they do generally engage in advertising targeting consumers. NIFLA Compl. ¶ 37 (alleging that NIFLA members "advertise their services and any referral services on their websites and through print handouts and brochures, newspaper or magazine ads, television commercials, social media, and other online ads"). They further concede their hypothetical future advertisements would be about a specific product or service—APR—and that they currently provide referrals to APR providers. NIFLA Compl. ¶¶ 34, 38. Thus, Plaintiffs cannot seriously contend that any hypothetical false or misleading advertisements about APR would satisfy at least two of the *Bolger* factors, notwithstanding their lack of an economic motivation. *See Bolger*, 463 U.S. at 66 (explaining that Court should consider "whether the communication is an advertisement, whether the communication makes reference to a specific product, and whether the speaker has an economic motivation for the communication" in determining whether the speech should be treated as commercial speech.).

classification of speech as commercial in the absence of the speaker's economic motivation." *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 285 (4th Cir. 2013) (citing *Bolger*, 463 U.S. at 67 n. 14). Under *Bolger*'s functional analysis, Plaintiffs' lack of direct payment therefore would not, on its own, render any advertising statements non-commercial speech.

Plaintiffs' next attempt to shield their past and their proposed statements about APR and referrals to APR providers from the Consumer Protection Statutes by linking them to the public debate over reproductive healthcare. PI Mem., 11, n. 24. This is equally unavailing because alleging a link to a "current debate" is not enough to remove commercial advertisements from lawful governmental commercial speech regulations. *See Bad Frog Brewery, Inc. v. New York State Liquor Auth.*, 134 F.3d 87, 97 (2d Cir. 1998). As the Enforcement Action makes clear, Plaintiffs remain free to make "general expressions of opinion about public matters," *see* PI Mem., 11, n. 24, and to make even blatantly false statements about abortion or APR, in the context of public debate. HBI Compl. ¶ 15. But them may not advertise a specific medical service using false statements about safety and efficacy that could impact consumers' health care decisions—and ultimately place their health at risk. *Id.* ¶¶ 120-149; 166-168; 176-179; 188-190; 196-202; 209-213; 218-220; 227-230; 236-239; 243-245; 249-251; 255-258.

Finally, the speech at issue in the Enforcement Action is unprotected because it is false and/or misleading. The safety and efficacy of APR have not been established by any credible scientific evidence. *See* Schreiber Decl. ¶ 101. Several courts have evaluated evidence offered to justify similar claims about APR—evidence virtually identical to what Plaintiffs proffer here—and, crediting Dr. Schreiber's expert opinion, concluded that "the 'abortion reversal' protocol is devoid of scientific support, misleading, and untrue." *Am. Med. Ass'n v. Stenehjem*, 412 F. Supp. 3d 1134,

1149 (D.N.D. 2019) (preliminarily enjoining law that would require physicians to inform patients that it "may be possible to reverse the effects of an abortion-inducing drug," because the state-mandated message is based on an "unproven medical and scientific theory" and "devoid of credible scientific evidence"); *see also, e.g.*, *Planned Parenthood of Tennessee and N. Mississippi v. Slatery*, 523 F. Supp. 3d 985, 989 (M.D. Tenn. 2021) (preliminarily enjoining law requiring physicians to inform patients that "[i]t may be possible to reverse the intended effects of a chemical abortion [*sic*] utilizing mifepristone" based, in part, on finding that "the mandated 'reversal' message is misleading because it suggests progesterone therapy has reached a level of safety and efficacy that is not supported by medical evidence"); *All-Options, Inc. v. Atty. Gen. of Ind.*, 546 F. Supp. 3d 754, 766-68 (D. Ind. 2021) (preliminarily enjoining law that would require physicians to inform patients that "[s]ome evidence suggests that the effects of Mifepristone may be avoided, ceased, or reversed" based on finding that the published studies, biological principles, and clinical experience proffered by the State was insufficient evidence of APR's effectiveness). To the extent Plaintiffs allege that they made or would like to make the same statements, in the same consumer-oriented context as those at issue in the Enforcement Action, those statements would likewise be false and/or misleading commercial speech and beyond the scope of First Amendment protection.

### c.  The OAG's Enforcement Action is not content or viewpoint based.

Plaintiffs argue that the Enforcement Action and/or hypothetical future enforcement of the Consumer Protection Statutes would infringe upon their First Amendment rights, asserting without support that the laws are facially content-based, and that as applied to the statements regarding APR they discriminate as to viewpoint. PI Mem. 8. Neither position finds support in fact or law.

Content-based discrimination occurs when a law facially, *i.e.*, through its text, regulates specific content, or where a facially neutral law is shown to have a discriminatory purpose, *i.e.*,

where the restriction is purely "adopted by the government because of disagreement with the message the speech conveys[.]" *See Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163-64 (2015) (internal quotations and citations omitted); *see also City of Austin v. Reagan National Advertising*, 596 U.S. 61 (2022).

The "first step in the content-neutrality analysis [is] determining whether the law is content neutral on its face." *Reed*, 576 U.S. at 1165. Even where a law is found to be facially content neutral, the law must then be examined to assess "whether the government has adopted [the] regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *see generally Clementine Company, LLC. v. Adams*, 74 F.4th 77, 84-90 (2d. Cir. 2023). "Government regulation of expressive activity is content neutral so long as it is justified without reference to the content of the regulated speech." *Ward*, 491 U.S. at 791 (internal quotation and citation omitted). The Consumer Protection Statutes are facially content-neutral—they apply on their face to false statements, and that prohibition applies regardless of the nature of the subject advertised or the content of the falsehood.

Plaintiffs rely exclusively on cases concerning *facially* content-based laws and regulations, which offer no support for their content-based discrimination argument. For example, *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 766 (2018), which addresses a California law that required crisis pregnancy centers to post government scripted messages concerning abortion and reproductive health. But government-scripted compelled speech is not relevant to the Consumer Protection Statutes, a neutral and generally applicable law that merely prohibits false speech rather than compelling any particular statements, or to their application in the Enforcement Action.

*Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002), involved a First Amendment overbreadth challenge to a federal law targeting and restricting materials the government deemed obscene, namely internet pornography, in the asserted interest of preventing children from accessing harmful material. The *Ashcroft* court found that the governmental interest was compelling but was not narrowly tailored because what was obscene to some may not be obscene to others, thus some of the material received First Amendment protection and the regulation was subject to strict scrutiny. The Court reasoned that the law did not enable others, like consenting adults, to access materials that would not be considered obscene, violating the First Amendment. *Ashcroft* is wholly inapposite because the law at issue was enacted targeting specific content, and some of the regulated content received First Amendment protection. Here, as explained, false and misleading commercial speech receives no First Amendment protection.

Similarly, *United States v. Caronia*, 703 F.3d 149, 152 (2d Cir. 2012), does not advance Plaintiffs' argument, because in *Caronia* the court found that the FDA's prohibition of certain *truthful* and *not misleading* off-label promotions of a drug violated the defendant's First Amendment rights when he was criminally charged and convicted for misbranding a drug. But notably, the *Caronia* court observed that "[o]f course, off-label promotion that is false or misleading is not entitled to First Amendment protection." *Id.* at 165 n.11. Neither *Caronia* nor any other precedent entitles Plaintiffs to engage in false and/or misleading advertising of APR.

Plaintiffs' efforts to demonstrate viewpoint discrimination are equally unavailing. Viewpoint discrimination is "[w]hen the government [is] not targeting subject matter, but particular views taken by speakers on a subject." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). The test for viewpoint discrimination is "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the [governmental]

restriction." *Id.* The application of the Consumer Protection Statutes in the Enforcement Action rests not on the viewpoints of the Defendants—who, the Complaint makes clear, remain free to oppose and counsel against abortion, HBI Compl. ¶ 15—but on the inaccuracy of their false and/or misleading statements to consumers regarding APR's safety and efficacy.

Plaintiffs cite *Rosenberger*, but that case involved a First Amendment challenge to the denial of generally available university funding to a student group based on the religious subject matter of the student group's publication. The denial was found to be viewpoint discrimination against a religious perspective. Here, the Enforcement Action named certain PHOs not because of their opposition to abortion or the viewpoints expressed in their advertisements, but because they maintained consumer-oriented websites with advertising containing false and/or misleading statements about APR, are part of HBI's network, and channeled consumers to obtain APR services. *See* Irving Decl. ¶ 9. While the Enforcement Action contained allegations regarding PHOs' opposition to abortion, and specifically, to medication abortion as a factor motivating the increasing promotion of APR, that viewpoint was not the basis of any claims asserted, and the Enforcement Action makes clear that PHOs remain free to continue advocating for their viewpoints outside of the context of false and/or misleading consumer advertising. HBI Compl. ¶ 15.

Plaintiffs attack the Attorney General's personal views on abortion, but have not produced a shred of evidence beyond their own conclusory statements demonstrating that the OAG targeted PHOs because of their viewpoints, as opposed to their fraudulent and misleading advertising practices. Indeed, there are countless PHOs that were *not* named in the Enforcement Action presumably holding similar views opposing abortion, including Gianna's House, Options Care

Center, and the numerous other PHOs listed in HBI's "Worldwide Directory of Pregnancy Help" as having locations in New York. *See* Irving Decl. ¶¶ 8-9.

### d. Rational basis is the applicable level of scrutiny and is satisfied.

Because OAG's enforcement of the Consumer Protection Statutes "regulates only unprotected commercial speech[,]" it "does not unconstitutionally burden the fundamental right to free speech [and]. . . is subject only to rational basis review." *See First Resort Inc. v. Herrera*, 860 F.3d 1263, 1278 (9th Cir. 2017); *see also Church of American Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 208 (2d Cir. 2004) (laws will withstand judicial review if justified by a rational basis where the activity does not invoke First Amendment protection).

The Enforcement Action arises from the State of New York's interest, at the heart of the Consumer Protection Statutes, in protecting New York consumers and the public interest from the harms false and/or misleading business and advertising practices cause. The Supreme Court has long recognized the governmental interest in preventing dissemination of commercial speech that is false, deceptive, or misleading." *Zauderer*, 471 U.S. at 638; *see also Karlin v. IVF America*, 93 N.Y.2d 282, 287 (1999) ("In order to ensure an honest marketplace, the [Consumer Protection Statutes] prohibit[] all deceptive practices, including false advertising, 'in the conduct of any business, trade or commerce or in the furnishing of any service in this state.'" (quoting N.Y. Gen. Bus. Law §§ 349, 350)). Because "consumers of medical services and products might be particularly vulnerable to unscrupulous business practices," and the Consumer Protection Statutes "have long been powerful tools aiding the Attorney General's efforts to combat fraud in the health care and medical services areas," the enforcement of those laws is rationally related to protecting those interests, satisfying rational basis review. *Karlin*, 93 N.Y.2d at 291.

**2.      Plaintiffs are unlikely to succeed on the merits of their claim that the Enforcement Action is selective enforcement based on PHO's viewpoint.**

Plaintiffs' selective enforcement claim similarly fails because they do not offer any evidence demonstrating that the Enforcement Action—much less any hypothetical future enforcement OAG might take against them—was or would be based on an impermissible consideration. To prevail in a selective enforcement claim, a party must demonstrate that, "(1) the person, compared with others similarly situated, was selectively treated; and (2) ... such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Crowley v. Courville*, 76 F.3d 47, 52-53 (2d Cir. 1996). Courts explain that both elements must be met: "in order to succeed on this claim, Plaintiff would have to establish not only disparate treatment, but also an intent by Defendants to inhibit the exercise of Plaintiff's constitutional rights, or an intent to discriminate based on race, religion, malice or bad faith." *Marathon Outdoor, LLC v. Vesconti*, 107 F. Supp. 2d 355, 363 (S.D.N.Y. 2000) (denying a preliminary injunction). Here, Plaintiffs fail to meet either element.

Plaintiffs argue that by applying the Consumer Protection Statutes in the Enforcement Action but not bringing an action against supporters of medication abortion, namely Planned Parenthood, the OAG has engaged in viewpoint based selective enforcement, in violation of PHOs' First Amendment rights. *See* PI Mem. 18. First, as previously discussed, the Enforcement Action is targeted at specific false and/or misleading statements about APR, not the HBI Defendants' religious or pro-life views, and Plaintiffs' conclusory assertions aside, there is no evidence that it is aimed at advancing anti-religious or anti-pro life views. Second, Planned Parenthood's statements about medication abortion are not comparable to the statements at issue in the Enforcement Action, or to the statements Plaintiffs allege they wish to make about APR. PI Mem.

19-20. Unlike APR, medication abortion is an FDA-approved medical treatment that has undergone rigorous clinical testing and demonstrated decades of safe and effective use. *See* Schreiber Decl. ¶¶ 16-23. Making representations "that comport substantively with statements approved as accurate by the FDA cannot supply the basis for" false advertising claims. *Cytyc Corp. v. Neuromedical Sys.*, 12 F. Supp. 2d 296, 301 (S.D.N.Y. 1998). In contrast, APR is an unproven and experimental treatment that has not undergone rigorous clinical testing and has been denounced by major medical associations. *See Id.* ¶ 98. Plaintiffs' comparison between the safety risks of medication abortion and APR is a false equivalence.

Plaintiffs also fail to show that either they or the HBI Defendants are similarly situated to Planned Parenthood, such that the OAG engaged in selective enforcement by bringing an Enforcement Action against the HBI Defendants but not Planned Parenthood. The general characteristics Plaintiffs identify in support of this claim are so broad that they could be used to describe many types of medical and/or service providers—including certain Plaintiffs and other PHOs that hold pro-life views but were not named in the Enforcement Action. Plaintiffs cannot hang their First Amendment claim on so thin a reed.

Finally, the claim of selective enforcement is defeated by the OAG's routine and historic use of the Consumer Protection Statutes to combat deceptive business and advertising practices related to numerous other medical services and products. As the New York Court of Appeals noted in *Karlin v. IVF*:

> "[The Consumer Protection Statutes] have long been powerful tools aiding the Attorney General's efforts to combat fraud in the health care and medical services areas. The Attorney General has relied on these provisions to challenge deceptive and fraudulent practices in contexts as diverse as the marketing of AIDS-related products (*People. v Overs Enters.*, Sup Ct, Westchester County, Colabella, J., index No. 16221/92); baldness treatments (*People v D.J. Carlisi.*, Sup Ct, NY County, Ostrau, J., index No. 41189/89); anti-abortion counseling clinics (*People v Northern Westchester Putnam Assistance to Mother & Unborn Child*, Sup Ct,

> Dutchess County, Beisner, J., index No. 92-135); hearing aids (*People v Tolbert*, Sup Ct, Clinton County, Dawson, J., \*292 index No. 35678/97); and the therapeutic benefits of adjustable beds and chairs (*People v Craftmatic/Contour Org.*, Sup Ct, NY County, Friedman, J., index No. 41535/91)[.]"

*See Karlin v. IVF America*, 93 N.Y.2d 282, 291-92 (1999). Indeed, in *Karlin*, as here, OAG

brought an enforcement action based on unsubstantiated claims about IVF's safety and efficacy.

### 3.    Plaintiffs are unlikely to succeed on the merits of their free exercise claim.

It is well established that the Free Exercise Clause does not excuse compliance with "a

valid and neutral law of general applicability." *Employment Div. v. Smith*, 494 U.S. 872, 879

(1990). Plaintiffs' Free Exercise claim fails because any alleged burden on religion is "merely the

incidental effect" of enforcing the neutral and generally applicable Consumer Protection Statutes,

which prohibit unlawful conduct that "the State is free to regulate." *Id.* at 878-79.

As an initial matter, the text of the Consumer Protection Statutes are (i) facially neutral,

because they do not "refer[] to a religious practice without a secular meaning discernable from the

language or context," *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533

(1993); (ii) operationally neutral because they do not "target[] religious conduct for distinctive

treatment" *see id.* at 534; and (iii) generally applicable because they do not "prohibit[] religious

conduct while permitting secular conduct that undermines the government's asserted interests in a

similar way." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 284 (2d Cir.), *opinion clarified*,

17 F.4th 368 (2d Cir. 2021) (*citing Fulton v. City of Philadelphia*, 593 U.S. 522, 533-34 (2021)).

Government action has been found to have a "neutral, secular purpose" where it relies on

"the way that the views of the [Defendants] interfered with the rights of New Yorkers" and not on

the "religious motivations" of the prohibited conduct. *See CompassCare v. Cuomo*, 465 F. Supp.

3d 122, 154 (N.D.N.Y. 2020) (appeal pending). And the Second Circuit recently determined that

even where a government official's statements could be read by some to suggest animosity towards

religion, that alone does not "establish that the purpose of the legislature was to target religion." *Slattery v. Hochul*, 61 F.4th 278, 292-93 (2d Cir. 2023) rejecting reliance on legislator's mention of employers' "personal beliefs" where the "legislation itself was generally directed at discrimination in the workplace and employee privacy"); *see also Miller v. McDonald*, No. 23-00484, 2024 WL 104077, at *9 (W.D.N.Y. Mar. 11, 2024) (holding that allegation that "the State targeted religious adherents" "fail[ed] to establish non-neutrality" where law was "neutral on its face").

Here, the OAG has denounced businesses that make false and deceptive representations about reproductive health services with no mention of any religious motivations. *See* PI Mem. 22-24 (acknowledging that "the Attorney General did not expressly mention the religious beliefs of [Defendant] organizations in her lawsuit" despite awareness that "many are affiliated with religious organizations[.]"). Plaintiffs offer no support for a conclusion that the OAG's objective was anything other than to protect New Yorkers from businesses and advertisements that provide false and/or misleading consumer-oriented information. Further, as discussed *supra*, *see* POINT IV.A.2, the risks posed by Planned Parenthood's activity and the OAG's interest in regulating such conduct are in no way comparable to those at issue in the Enforcement Action. *See* Schreiber Decl. ¶¶ 16-23.

Plaintiffs' "selective enforcement" argument is equally meritless. Plaintiffs fail to identify where the statutes "invite[] the government to consider the particular reasons for a person's conduct"—let alone that the OAG has "refuse[d] to extend that system to cases of 'religious hardship' without compelling reason." *See Fulton,* 593 U.S. at 533-34; *see also Emilee Carpenter LLC v. James*, __ F.4th __ 2024 WL 3381841 at *13 (2d Cir. July 12, 2024) (finding N.Y. public accommodations law lacks individual exemptions). And because there is no discretionary

38

exemption system under the Consumer Protection Statutes, there is no "risk that administrators will use their discretion to exempt individuals from complying with the law for secular reasons, but not religious reasons." *We the Patriots,* 17 F.4th at 288; *see also Roman Cath. Diocese of Albany v. Vullo*, __ N.E. 3d __, 2024 WL 2278222 (N.Y. May 21, 2024) (statute requiring insurance coverage of medically necessary abortion care with exceptions for defined religious entities did not constitute discretionary system of individualized assessments).

As neutral, generally applicable laws, the Consumer Protection Statutes—and the OAG's enforcement thereof, including through the Enforcement Action—are subject only to rational basis review. *Cent. Rabbinical Cong. v. NYC Dept. of Health and Mental Hygiene,* 763 F.3d 183, 193 (2d Cir. 2014). These easily meet this standard as they are rationally related to protecting New Yorkers from misleading and/or false advertising and fraudulent business conduct.

**B.    Plaintiffs have not shown irreparable harm.**

In the Second Circuit, the "presumption of irreparable harm arising from a constitutional deprivation is not automatic." *Joglo Realties, Inc. v. Seggos*, No. 16-cv-1666, 2016 WL 449140, at *16 (E.D.N.Y. Aug. 24, 2016). Instead, the Second Circuit has held that it "often will be more appropriate to" consider the nature and extent of the alleged injuries to the plaintiff absent injunctive relief. *Time Warner Cable v. Bloomberg L.P.*, 118 F.3d 917, 924 (2d Cir. 1997).

Here, there is no current risk of irreparable harm requiring this Court's intervention given that the OAG has not sued or taken any action against Plaintiffs. Indeed, as explained above, Plaintiffs' own past statements about APR were not sufficiently commercial-oriented to violate the Consumer Protection Statutes. And, as to Plaintiffs' hypothetical future statements, Plaintiffs have not alleged the substance and context of those statements, nor their intent to make them, in

sufficiently concrete terms. To the extent Plaintiffs wish to copy the statements of the HBI Defendants, the legality of those statements will be resolved in the Enforcement Action.

**C.      The balance of equities and the public interest weigh in favor of the OAG.**

Finally, the balance of equities and considerations of the public interest weigh heavily against Plaintiffs. *Otoe-Missouria Tribe v. N.Y.S. Dep't of Fin. Servs.*, 769 F.3d 105, 112 n.4. (2d Cir. 2014). "These factors merge when the Government is the opposing party." *Make the Rd. N.Y. v. Cuccinelli*, 419 F. Supp. 3d 647, 665 (S.D.N.Y. 2019).

The OAG has a significant interest in enforcing the Consumer Protection Statutes to protect New York consumers against false and misleading commercial speech. Through this lawsuit, Plaintiffs seek a broad injunction prohibiting the OAG from not only enforcing the Consumer Protection Statutes against them (something that has not yet occurred) for their vague future statements about APR, but also from enforcing the statutes against any NIFLA member for any potential future statements about APR, even if such statements are blatantly false advertising. Placing such restrictive handcuffs on the OAG's ability to protect New York consumers, based only on hypotheticals, is inequitable and does not serve the public interest.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.

Dated:   July 29, 2024
Buffalo, New York

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants

BY: *Daniel R. Maguire*
ALYSSA J. PANTZER
DANIEL R. MAGUIRE
Assistant Attorney General, of Counsel
Main Place Tower, Suite 300A
350 Main Street
Buffalo, NY 14202
(716) 853-8400
Alyssa.Pantzer@ag.ny.gov
Daniel.Maguire@ag.ny.gov