**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

NATIONAL INSTITUTE OF FAMILY AND LIFE ADVOCATES; GIANNA'S HOUSE, INC.; CHOOSE LIFE OF JAMESTOWN, INC. doing business as Options Care Center; SUMMIT LIFE CENTER, INC., a New York not-for-profit corporation, THE EVERGREEN ASSOCIATION, INC., a New York not-for-profit corporation doing business as EXPECTANT MOTHER CARE; and EMC FRONTLINE PREGNANCY CENTERS,

*Plaintiffs*,

v.

LETITIA JAMES, in her official capacity as Attorney General of the State of New York,

*Defendant*.

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO MODIFY PRELIMINARY INJUNCTION TO EXTEND RELIEF TO NIFLA'S UNNAMED NEW YORK MEMBERS NOT SUBJECT TO ONGOING STATE ACTION**

Case No.: 1:24-cv-00514-JLS-HKS

Plaintiffs National Institute of Family and Life Advocates, Gianna's House, and Choose Life of Jamestown, d/b/a Options Care Center ("NIFLA Plaintiffs") and Summit Life Center, Inc., The Evergreen Association, Inc., d/b/a Expectant Mother Care, and EMC Frontline Pregnancy Centers jointly move to modify the preliminary injunction entered on August 22, 2024, and affirmed by the Second Circuit on December 1, 2025, to extend its protections to NIFLA's unnamed members not subject to the ongoing state enforcement action.[1]

On September 15, 2026, the Second Circuit sitting en banc overruled the categorical bar to associational standing for actions under 42 U.S.C. § 1983 that

[1] Attorney General James's state enforcement action, *The People of the State of New York v. Heartbeat Intern., Inc.*, No. 451314/2024 (N.Y. Sup. Ct. 2024), involves Heartbeat International, Inc. and eleven New York pregnancy centers. For the purpose of this Motion, "NIFLA's unnamed members" refers only to those centers not subject to that action. So abstention would not be warranted for the same reasons this Court and the Second Circuit have already articulated. *See* Decision & Order at 15, Dkt. No. 37; *Nat'l Inst. of Fam. & Life Advocs. v. James*, 160 F.4th 360, 364 (2d Cir. 2025).

originated in *Aguayo v. Richardson*, 473 F.2d 1090 (2d Cir. 1973). *See Defending Educ. v. Croton-Harmon Union Free Sch. Dist.*, No. 24-1900, 2025 WL 5281079 (2d Cir. Sep. 15, 2026) (*on reconsideration en banc*). This Court denied NIFLA's associational standing based solely on that line of precedent. Decision & Order at 9 n.7, Dkt. No. 37. Plaintiffs thus ask the Court to extend its preliminary injunction to NIFLA's New York members not subject to the ongoing state enforcement action.

## I. Procedural Background

The NIFLA Plaintiffs brought this civil rights action under 42 U.S.C. § 1983, alleging violations of their First and Fourteenth Amendment rights. Verified Compl. for Declaratory J. and Injunctive Relief ¶ 18, Dkt. No. 1. Their Verified Complaint asserts associational standing on behalf of NIFLA's New York members "whose ability to advertise and provide services, counseling, and information about progesterone treatment are impeded by the Attorney General's application of New York law and her censorship campaign against pro-life pregnancy centers." *Id.* ¶¶ 40–41. The prayer for relief seeks to protect "Plaintiffs and their members." *Id.* at 66 ¶ A.

This Court found the NIFLA Plaintiffs likely to succeed on the merits of their First Amendment claim and granted a preliminary injunction that protects the named plaintiffs only. Decision & Order at 35–36, Dkt. No. 37. The Court acknowledged—as did the NIFLA Plaintiffs—that "circuit precedent appears to preclude [NIFLA] from seeking relief on behalf of any members at this time." *Id.* at 9 n.7. The issue was therefore "resolved against [NIFLA] and, thereby, preserved for appellate review." *Id.*

On appeal, the Second Circuit affirmed, agreeing that Plaintiffs' APR-related statements are noncommercial speech and that the State had not met its burden to show it could survive strict scrutiny. *See Nat'l Inst. of Fam. & Life Advocs. v. James*, 160 F.4th 360, 375 (2d Cir. 2025). The panel noted that NIFLA had alleged associational standing on behalf of its unnamed members, but that this Court denied it

because "this Court's precedent foreclosed such assertions regarding associational standing." *Id.* at 367 n.6.

## II. The Court should modify the injunction in light of changed law.

A court may modify a preliminary injunction when controlling law changes. *See Agostini v. Felton*, 521 U.S. 203, 215 (1997). The Second Circuit's overruling of *Aguayo*'s bar on associational standing is exactly such a change.

### A. This Circuit's position on associational standing has changed.

On September 15, 2026, the Second Circuit sitting en banc overruled the categorical bar to associational standing in § 1983 cases found in *Aguayo* and its progeny—including *Nnebe*, the case this Court cited to deny NIFLA's associational standing. The Second Circuit found it "stand[s] alone as the sole federal circuit that bars associations from suing on behalf of their members for § 1983 claims" and that *Aguayo*'s bar was "inconsistent with prevailing Supreme Court decisions as well as the uniform holdings of our sister circuits." *Defending Educ.*, 2025 WL 5281079 at *2, *3. In short, *Aguayo*'s rule was "simply wrong." *Id.* at *4.

The Second Circuit has now adopted the associational standing test articulated by *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). *Defending Educ.*, 2025 WL 5281079 at *5–6. Thus, an organization has standing to sue on behalf of its members under § 1983 when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343.

This change eliminates the barrier to NIFLA's associational standing. Because *Aguayo* had disposed of the issue, this Court never reached the merits of NIFLA's claim under the *Hunt* test. But NIFLA satisfies it. *See* Compl. ¶¶ 40–43, Dkt. No. 1.

**B. NIFLA is entitled to associational standing under *Hunt*.**

Because NIFLA's unnamed members confront the same enforcement threat and engage in the same constitutionally protected speech as the named Plaintiffs, NIFLA independently satisfies each prong of the *Hunt* test.

*First*: NIFLA's members have standing to sue in their own right. *Hunt*, 432 U.S. at 343. NIFLA has approximately 51 member centers in New York. Compl. ¶ 24, Dkt. No. 1. Two of those centers are Gianna's House and Options Care Center, which this Court already concluded have standing in their own right. Decision & Order at 13, Dkt. No. 37. The unnamed centers face the same enforcement threat and suffer the same constitutional injury for their APR-related speech. Some "make, have made, or would like to make statements about progesterone treatment that the Attorney General alleges violate" the Business Fraud Statutes. Compl. ¶ 38, Dkt. No. 1. Their speech is "identical or nearly identical to—and others were substantially similar to—the statements made by the faith-based, pro-life pregnancy centers that have been sued by the Attorney General." *Id.* ¶ 173; *see also id.* ¶¶ 200, 217. And that speech is chilled by the Attorney General's actions. *Id.* ¶¶ 39, 170. Moreover, the Court has found—and the Second Circuit affirmed—a credible threat of enforcement. Decision & Order at 10–13, Dkt. No. 37. That threat applies equally to unnamed NIFLA members engaged in the same speech.

*Second*: The interests NIFLA seeks to protect are germane to its purpose. *Hunt*, 432 U.S. at 343. NIFLA is a 501(c)(3) nonprofit whose mission is to "empower women and men facing unplanned pregnancies to choose life and to protect life-affirming pregnancy centers by equipping them with legal resources, counsel, education, training, and support, and by representing their interests in litigation when necessary to preserve their constitutional rights." Compl. ¶ 27, Dkt. No. 1. NIFLA provides its New York members with materials and guidance about APR. *Id.* ¶¶ 178–179. And protecting its members' right to communicate this information is central to

NIFLA's organizational purpose to "support[ ] pro-life pregnancy center members, enabling them to carry out their missions consistent with their pro-life and religious viewpoints, protect[ ] members' legal interests, and empower[ ] women and men facing unplanned pregnancies to choose life for their unborn children." *Id.* ¶¶ 41–42.

*Third*: Neither the claims asserted nor the relief requested require individual members' participation. *Hunt*, 432 U.S. at 343. NIFLA seeks declaratory and injunctive relief, not individualized damages. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975) ("[S]o long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members."). And the injunction is categorical, not plaintiff-specific: it protects "[s]tatements using the term 'abortion pill reversal' or 'APR' related to chemical abortions"; "[s]tatements referring to the APR Hotline or AbortionPillReversal.com"; "[s]tatements indicating that Abortion Pill Reversal (or APR), or progesterone, is safe"; and "[s]tatements that Abortion Pill Reversal (or APR), or progesterone, is effective." Decision & Order at 35–36, Dkt. No. 37. It also covers any "substantially similar statements[ ] directed toward the public—or women considering or in the midst of a chemical abortion" in the centers' "advertising, public websites, social media platforms, promotional materials, and resources provided to pregnancy centers (or in substantially similar contexts)." *Id.* NIFLA's unnamed members seek the same relief.

**C. NIFLA's unnamed members satisfy the injunction factors.**

Because NIFLA satisfies the *Hunt* test for associational standing, NIFLA's unnamed members are also entitled to the same preliminary relief that the NIFLA Plaintiffs have achieved. The constitutional questions relevant to the NIFLA Plaintiffs are identical for all similarly situated NIFLA members: whether the Attorney General's enforcement of the Business Fraud Statutes against pregnancy centers' APR-related speech violates the First Amendment. This Court and the Second Circuit

have already concluded that the NIFLA Plaintiffs' APR-related speech is noncommercial and that the State cannot satisfy strict scrutiny. *James*, 160 F.4th at 364, 378–79. Those holdings apply equally to unnamed members engaging in the same or substantially similar speech. NIFLA's unnamed members are chilled from exercising their constitutional rights. Compl. ¶ 39, Dkt. No. 1. Several have removed protected speech from their materials. *Id.* ¶¶ 169–70, 212, 230; *see also* Decision & Order at 31–33, Dkt. No. 37. NIFLA's unnamed members are thus likely to succeed on the merits of their identical constitutional claims for the same reasons the Court found the NIFLA Plaintiffs were likely to succeed on the merits of their claims.

And because they are likely to succeed on the merits, NIFLA's unnamed members also meet the remaining preliminary injunction factors. *See James*, 160 F.4th at 373. The loss of First Amendment freedoms, for even minimal periods of time, constitutes irreparable injury as a matter of law. Decision & Order at 33, Dkt. No. 37. And this Court and the Second Circuit have already determined that the balance of equities and public interest favor injunctive relief. *Id.* at 33–34; *James*, 160 F.4th at 380. So too for NIFLA's unnamed members.

## III. Judicial economy favors modification.

Without a modified injunction, NIFLA's unnamed members would have to file separate lawsuits raising identical legal questions that this Court and the Second Circuit have already resolved. Associational standing exists to avoid precisely this kind of multiplicity. Modifying the injunction is the most efficient path forward.

## CONCLUSION

The Second Circuit's en banc *Defending Education* decision eliminates the sole basis for denying NIFLA's associational standing. NIFLA satisfies the *Hunt* test: its members have individual standing, the interests at stake are germane to NIFLA's purpose, and individual participation is unnecessary. The Court should extend the preliminary injunction to all of NIFLA's New York members not subject to the

ongoing state enforcement action. Doing so will safeguard the same categories of constitutionally protected speech that this Court and the Second Circuit have already identified and promote judicial economy.

Respectfully submitted this 25th day of September, 2026.

*/s/ Christopher A. Ferrara*
Christopher A. Ferrara
THOMAS MORE SOCIETY
148-29 Cross Island Parkway
Queens, NY 11357
T: 718-357-1040
cferrara@thomasmoresociety.org

Peter C. Breen
THOMAS MORE SOCIETY
121 W Wascker Dr, Ste 650
Chicago, IL 60601
T: 312-782-1680
pbreen@thomasmoresociety.org

**Counsel for Plaintiffs Summit Life Center, Inc., The Evergreen Association, Inc., and EMC Frontline Pregnancy Centers**

*/s/ Gabriella M. McIntyre*
Tyson C. Langhofer*
Travis C. Barham*
J. Caleb Dalton*
Gabriella M. McIntyre*
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
T: (571) 707–4655
tlanghofer@adflegal.org
tbarham@adflegal.org
cdalton@adflegal.org
gmcintyre@adflegal.org

Denis A. Kitchen
DENIS A. KITCHEN, P.C.
8899 Main Street
Williamsville, NY 14221
T: (716) 631-5661
denis@kitchenlaw.com

**Counsel for Plaintiffs National Institute of Family and Life Advocates; Gianna's House, Inc.; and Choose Life of Jamestown, Inc.**

* *Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2026, I caused a copy of this document to be served on all parties via the Court's electronic filing system.

Dated: September 28, 2026

*<u>/s/ Gabriella M. McIntyre</u>*
Gabriella M. McIntyre

**Counsel for Plaintiffs National Institute of Family and Life Advocates, Gianna's House, Inc., and Choose Life of Jamestown**