UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NATIONAL INSTITUTE OF FAMILY AND LIFE ADVOCATES, GIANNA'S HOUSE, INC., and CHOOSE LIFE OF JAMESTOWN, INC. d/b/a OPTIONS CARE CENTER,

Plaintiffs,

vs.

LETITIA JAMES, in her official capacity as Attorney General of the State of New York.

Defendant.

Case No. 24-cv-00514-JLS

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY PRELIMINARY INJUNCTION**

LETITIA JAMES
Attorney General of the State of New York
DANIEL R. MAGUIRE
Assistant Attorney General, of Counsel
Main Place Tower, Suite 300A
350 Main Street
Buffalo, New York 14202
Tel: (716) 853-8419

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 3

NIFLA HAS NOT ESTABLISHED STANDING FOR PURPOSES OF OBTAINING A PRELIMINARY INJUNCTION FOR ITS UNNAMED MEMBERS ........ 3

CONCLUSION ........ 9

## TABLE OF AUTHORITIES

***Cases***

*Air Transp. Ass'n of Am. v. Reno*,
80 F.3d 477 (D.C. Cir. 1996) ........ 4

*Cacchillo v. Insmed, Inc.*,
638 F.3d 401 (2d Cir. 2011) ........ 3

*Coalition for Humane Immigrant Rights v. U.S. Dep't of Homeland Security*,
780 F. Supp. 3d 79 (D.D.C. 2025) ........ 6

*Culture of Life Fam. Servs., Inc. v. Bonta*,
No. 24-cv-1338, 2025 WL 1687929 (S.D. Cal. June 13, 2025) ........ 7

*Do No Harm v. Pfizer Inc.*,
126 F. 4th 109 (2d Cir. 2025) ........ 3

*First Resort, Inc. v. Herrera*,
860 F.3d 1263 (9th Cir. 2017) ........ 8

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) ........ 3

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ........ 3

*Nat'l Inst. for Family and Life Advocates v. James*,
746 F. Supp. 3d 100 (W.D.N.Y. 2024) ........ 2

*Nat'l Inst. of Fam. & Life Advocs. v. James*,
160 F.4th 360 (2d Cir. 2025) ........ 3, 5, 7

*Tanner-Brown v. Haaland*,
105 F.4th 437 (D.C. Cir. 2024) ........ 4

*Warth v. Seldin*,
422 U.S. 490 (1975) ........ 4

*Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*,
471 U.S. 626 (1985) ........ 6

Defendant Letitia James, in her official capacity as New York State Attorney General ("OAG"), submits this memorandum of law in opposition to Plaintiffs' Motion to Modify the Preliminary Injunction to Extend Relief to NIFLA's Unnamed New York Members Not Subject to Ongoing State Action.

## PRELIMINARY STATEMENT

In September 2026, the Second Circuit overruled its previous precedent and held that an organization may have associational standing on behalf of its members when bringing a Section 1983 case. Under the new precedent, however, an organization does not automatically have standing. The organization still must allege (and prove on a motion for a preliminary injunction) that: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim nor the relief requested requires the participation of the individual members in the lawsuit.

In its motion, the National Institute of Family and Life Advocates ("NIFLA") failed to demonstrate that its claim and relief requested did not require the participation of its individual members. Specifically, NIFLA's unnamed members must individually demonstrate that their advertising of APR services is not commercial speech before the preliminary injunction can be extended to them. On a motion for a preliminary injunction, it is not enough for NIFLA to simply allege on behalf of its members that they do not engage in commercial speech. The members themselves must produce such evidence, especially since NIFLA's allegations indicate that it does not limit membership solely to entities with no economic motivation, it encouraged its members to provide APR, and some members do directly offer APR—all factors the Second Circuit has recognized are relevant to the commercial speech inquiry.

## BACKGROUND

NIFLA is a nonprofit, faith-based membership organization with member pregnancy centers located across the nation, including 51 centers in New York. Compl., ECF No. 1, ¶ 24-26. It, with two of its member centers (Gianna's House, Inc. and Choose Life of Jamestown, Inc., d/b/a Options Care Center, collectively the "NIFLA Plaintiffs")), have made, and seek to continue to make, statements regarding abortion pill reversal (also known as "APR"). The NIFLA Plaintiffs allege that, because the OAG has initiated a civil enforcement action in New York state court against entities not involved in this lawsuit for making statements that are the same as or similar to statements the NIFLA Plaintiffs have made, or wish to make, the NIFLA Plaintiffs face a threat of sanctions if they continue to engage in this speech. *Id.* at ¶ 316. To prevent OAG from regulating their speech, the NIFLA Plaintiffs brought this action for declaratory and injunctive relief, asserting that the regulation of their APR-related statements violates their First and Fourteenth Amendment rights. *Id.* at ¶¶ 318, 399.

After filing the lawsuit, the NIFLA Plaintiffs moved for a preliminary injunction enjoining OAG from enforcing New York's consumer protection laws against them for APR related statements. This Court granted the motion concluding that the NIFLA Plaintiffs were likely to succeed on the merits because regulating the NIFLA Plaintiff's APR-related statements constituted content and viewpoint-based regulation of non-commercial speech that cannot survive strict scrutiny. *Nat'l Inst. for Family and Life Advocates v. James*, 746 F. Supp. 3d 100, 120 (W.D.N.Y. 2024). Central to the Court's analysis was its conclusion that the NIFLA Plaintiffs had demonstrated that they had no economic motivation for their APR-related speech. *Id.*

On appeal, the Second Circuit affirmed, finding that the NIFLA Plaintiffs' intended APR-related statements are noncommercial speech and that OAG had not met its burden to show it could survive strict scrutiny. *See Nat'l Inst. of Fam. & Life Advocs. v. James*, 160 F.4th 360, 375 (2d Cir. 2025). Like this Court, the Second Circuit relied on the current record demonstrating that "the NIFLA plaintiffs receive no remuneration or financial benefit for engaging in" the APR-related speech, including because they do not provide APR themselves. *Id.*

## ARGUMENT

### NIFLA HAS NOT ESTABLISHED STANDING FOR PURPOSES OF OBTAINING A PRELIMINARY INJUNCTION FOR ITS UNNAMED MEMBERS

Pursuant to *Defending Educ.*, an organization has associational standing to sue on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The Attorney General does not dispute that NIFLA meets the first two elements. NIFLA, however, has not fulfilled its burden on the third element—the "member-participation" prong of the *Hunt* associational standing test.

It is well settled that "[a] plaintiff's burden to demonstrate standing increases over the course of litigation." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011). As with any other matter on which the plaintiff bears the burden of proof, "each element of standing must be supported 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Do No Harm v. Pfizer Inc.*, 126 F. 4th 109, 119 (2d Cir. 2025) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). To establish standing for a preliminary injunction, "a plaintiff cannot rest on such mere allegations as would be appropriate at the

pleading stage but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Cacchillo*, 638 F. 3d at 404 (cleaned up).

The member-participation inquiry turns on whether the organization's requested relief can be awarded without "individualized proof" from its members. *See Air Transp. Ass'n of Am. v. Reno*, 80 F.3d 477, 483 (D.C. Cir. 1996). If individualized proof is required to resolve a claim or award relief, the member-participation requirement is not satisfied. *Id.*; *Warth v. Seldin*, 422 U.S. 490, 515-16 (1975) (declining to recognize associational standing to pursue a damages claim when "both the fact and extent of injury would require individualized proof"); *Tanner-Brown v. Haaland*, 105 F.4th 437, 447 (D.C. Cir. 2024) (declining to recognize associational standing to pursue a claim for an accounting that would require "individualized determinations").

Here, NIFLA seeks to extend the preliminary injunction that currently applies to named Plaintiffs to unnamed members who have not provided any proof about their interests and activities. Accordingly, the "member-participation" element inquiry is whether that relief can be awarded without individualized proof from NIFLA's unnamed members. Put differently, can this Court prohibit OAG from enforcing New York's consumer protection laws against NIFLA's unnamed members without those unnamed members providing any individualized evidence in this litigation? It cannot.

NIFLA argues that individualized evidence is not necessary because "the injunction is categorical, not plaintiff specific." Pl. Mem., ECF No. 86-1, 5. While the injunction may be categorical as to the kinds of statements that may be made, whether an individual NIFLA member falls within the bounds of the injunction requires the Court to undertake the same

individualized inquiry for each unnamed member that it undertook for the named Plaintiffs.[1] Specifically, before the injunction can apply to an unnamed NIFLA member, this Court must find that the statements the unnamed NIFLA member intends to make are not commercial speech based on the context and specific facts surrounding that speech.

In granting the preliminary injunction, this Court concluded that the Plaintiffs were not engaged in commercial speech when advertising APR because "there is no evidence of any underlying economic motivation." Decision and Order ("Order"), ECF No. 37, 27. The Court reached this conclusion based on Plaintiffs' allegations that: (1) Plaintiffs do not perform APR themselves; (2) Plaintiffs refer clients interested in APR to physicians who provide it; (3) Plaintiffs do not receive any remuneration for the referrals; and (4) women referred by Plaintiffs for APR do not pay for the APR treatment. *Id.* at 27-28. The Second Circuit, in affirming the preliminary injunction, emphasized that "context matters" to the "fact intensive" commercial speech inquiry, and similarly based its affirmation on the conclusion that Plaintiffs have no economic motivation for the APR advertisement:

> They also assert that they ***do not provide APR themselves, and there is no evidence in the record to the contrary.*** Furthermore, although they make referrals to ***third-party providers***, which then provide APR, it is uncontroverted that they receive no commission, fee, or other form of direct or indirect remuneration for making these referrals. Thus, any decision to proceed with that protocol is made between the individuals and a ***separate third-party provider*** the individual is referred to, including through the [Abortion Pill Rescue Network].

*NIFLA*, 160 F.4th at 374 (emphasis added).[2]

---

[1] This Court did not undertake such an individualized inquiry for NIFLA's unnamed members at the time the injunction was ordered, recognizing NIFLA's own acknowledgement that it was precluded from seeking relief on behalf of its members under then-controlling law, and finding that "[t]o the extent NIFLA seeks to assert the rights of its members, the issue is accordingly resolved against it." Decision and Order, ECF No. 37 at n.7.

[2] The Second Circuit did not reach the question of associational standing, noting that NIFLA withdrew its challenge on cross-appeal. *NIFLA*, 160 F.4th at 367 n.6.

To extend the preliminary injunction to the unnamed NIFLA members, the Court would have to conduct a comparable fact-intensive analysis, including consideration of whether those organizations "provide APR themselves" or make referrals to "separate third-party provider[s]" for APR and what impact that has on their economic motivation for advertising APR.[3] The Court cannot make such a finding without those unnamed members submitting evidence, or at the very least, providing specific allegations about their provision of or the nature of their referrals for APR and that they have no economic motivation for their APR advertisements. Extending the preliminary injunction to the unnamed NIFLA members without them satisfying, at a minimum, the standard satisfied by NIFLA Plaintiffs risks improperly infringing on OAG's ability to enforce New York's consumer protection laws against entities that *are* engaged in false and misleading commercial speech, which the state is "free to prevent." *Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*, 471 U.S. 626, 638 (1985).

On reply, NIFLA will likely argue that it alleged in the Complaint that its unnamed members, just like Plaintiffs, advertise APR for non-economic purposes and engage in the exact same conduct with respect to APR as Plaintiffs. *See* Compl., ECF No. 1, ¶¶ 32-36, 361-62. When applying for a preliminary injunction, however, allegations alone are not sufficient. *Cacchillo*, 638 F. 3d at 404. This is particularly true where the allegations are made by NIFLA on behalf of its unnamed members, not by the members themselves. *See Coalition for Humane Immigrant Rights v. U.S. Dep't of Homeland Security*, 780 F. Supp. 3d 79, 91 (D.D.C. 2025).

[3] The Second Circuit affirmed that none of the commercial speech factors identified in *Bolger v. Youngs Drug Prods. Corp.*, including economic motive, is dispositive or required. *NIFLA*, 160 F.4th at 374. However, because this factor was important to this Court's and the Second Circuit's commercial speech analysis for NIFLA Plaintiffs, it should also be considered for unnamed members.

*Coalition for Humane Immigrant Rights* is instructive. There, a membership organization attempted to establish associational standing for a preliminary injunction enjoining a federal policy solely through allegations made ***by the membership organization*** about harms to its ***members***. *Id.* The Court rejected this attempt, explaining that the membership organization could not rely on hearsay to establish associational standing:

> The first problem is that Plaintiffs have failed to adduce sufficient evidence to support their allegations. The only allegations of concrete harm to individual members that Plaintiffs present are in the form of pseudonymous hearsay. That is, the organizations are describing the harms their members have suffered while using false names for those members. *See, e.g.*, Decl. G. Escobar ¶ 14 ("ME is a CASA member" who "is afraid to register, because it could expose himself and his family, including his wife who is also undocumented, to the risk of detention and deportation."). The Court has no sworn testimony from the members themselves. More, these pseudonymous reports are contained in affidavits submitted by the organizations, which are themselves hearsay evidence. This means all the Court has to go on is hearsay-within-hearsay.

*Id.* Just as the Coalition for Humane Immigrant Rights could not establish associational standing through hearsay evidence, NIFLA should not be able to establish associational standing through hearsay allegations that all its members are engaged in non-commercial speech.

Furthermore, to the extent NIFLA's hearsay allegations are considered, they only underscore the need for individualized commercial speech inquiries for each of the unnamed members because these allegations show that at least some unnamed members provide APR themselves. Where the speaker "actually provides the APR treatments itself to its own patients" there may be a "stronger case" for "economic motivation." *See Culture of Life Fam. Servs., Inc. v. Bonta*, No. 24-cv-1338, 2025 WL 1687929, at *6 (S.D. Cal. June 13, 2025) (denying a motion for preliminary injunction after concluding that APR-related speech was commercial); *see also NIFLA*, 160 F.4th at 378 n.11. NIFLA alleges that it previously encouraged its members to provide APR. *See* Compl., ECF No. 1, ¶¶ 178–79; Ex. U, ECF No. 2-9 ("NIFLA encourages

provision of Abortion Pill Reversal"). NIFLA also alleges that following OAG's civil enforcement action, it "stopped advising its centers in New York to offer progesterone treatment (***unless they are already offering it***) . . . ." Compl., ECF No. 1, ¶ 187 (emphasis added). The undisputed provision of APR by at least some unnamed NIFLA members is a critical factual distinction from NIFLA Plaintiffs—and one that was not accounted for in this Court's and the Second Circuit's commercial speech analysis.

As the Second Circuit recognized, there may well be economic benefits derived from advertisements that relate to the provision of free medical services, "such as an increased customer base or a capital increase through fundraising," and that alter the commercial speech analysis. *NIFLA*, 160 F.4th at 377 (citing *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1273 (9th Cir. 2017)). The Second Circuit also recognized that economic motivation may be demonstrated through fundraising based on APR-related activities, even if the speaker does not actually provide APR. *See NIFLA*, 160 F.4th at 378 n.11 (citing *NIFLA v. Bonta*, 769 F. Supp. 3d 1109 (C.D. Cal. 2025) and noting that "the district court found that a powerful economic motivation was demonstrated because the plaintiffs in that case, including NIFLA, did not dispute that they engaged in grant fundraising based, in part, on their APR advocacy and technical support") (cleaned up). NIFLA alleges only that NIFLA's unnamed members do not charge or receive remuneration for their services, Compl., ECF No. 1, ¶¶ 32, 35, but is silent as to whether those unnamed members engage in fundraising related to the provision of APR or other APR-related advocacy. Moreover, this is not the only indicator of economic motivation, and NIFLA does not appear to maintain any bar to membership for members with economic motivation for their activities.

To the extent some unnamed members actually provide the APR service they are advertising or engage in APR-related fundraising, the context for that speech, and their economic motivation for engaging in it, must be analyzed on a member-by-member basis, requiring participation of those unnamed members in this litigation. No shortcuts can be taken to establish standing for NIFLA's unnamed members and entitlement to the relief sought because ultimately "a court's lodestars in distinguishing commercial from noncommercial speech must be the nature of the speech taken as a whole." *NIFLA*, 160 F.4th at 374 (cleaned up). NIFLA's hearsay allegations do not allow for that analysis, particularly as to unnamed members who provide APR and may engage in APR-related fundraising. NIFLA has not established standing for purposes of obtaining a preliminary injunction for its unnamed members, and the motion should be denied.[4]

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion to extend the preliminary injunction.

[4] An additional reason the motion should be denied is that the Court cannot issue a preliminary injunction prohibiting OAG from enforcing New York's consumer protection laws against NIFLA's unnamed members without specifically identifying those members. A district court, in issuing an injunction, must "be specific in terms" and "describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." *Fonar Corp. v. Deccaid Servs., Inc.*, 983 F.2d 427, 430 (2d Cir. 1993). This requirement is satisfied only if the party or parties enjoined "can ascertain from the four corners of the order precisely what acts are forbidden." *Id.*; *see also Cedar Swamp Holdings, Inc. v. Zaman*, 472 F. Supp. 2d 591, 596 (S.D.N.Y. 2007). Extending the preliminary injunction to NIFLA's non-party members without first identifying those members would violate this requirement. The OAG does not know NIFLA's membership, and an injunction prohibiting OAG from enforcing consumer protection laws against "NIFLA's members" would not be sufficiently specific to inform OAG as to which entities are covered (or not covered) by the preliminary injunction.

Dated: October 16, 2026
Buffalo, New York

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants

BY: *Daniel R. Maguire*
DANIEL R. MAGUIRE
Assistant Attorney General, of Counsel
Main Place Tower, Suite 300A
350 Main Street
Buffalo, NY 14202
(716) 853-8400
Daniel.Maguire@ag.ny.gov